# JANUARY TERM, 1907.

FIRST NATIONAL BANK OF DETROIT *v.* CURRIE.

1. BILLS AND NOTES—CHECKS — INDORSEMENT — LIABILITY OF IN-
   DORSER.
   The undertaking of the indorser of a check is that, if not paid
   on presentation within a reasonable time, he will pay it, pro-
   vided he is properly notified; a reasonable time for presenta-
   tion and demand for payment being within the day following
   the indorsement.

2. SAME—LIABILITY OF INDORSEE.
   The indorsee of a check, as between himself and the indorser,
   undertakes to demand payment within the day following the
   indorsement, and, if payment is not made, to give due notice
   of dishonor.

3. SAME—LACK OF FUNDS OF DRAWER.
   The fact that there are no funds in the account against which
   a check is drawn does not relieve the indorsee thereof from
   the duty of presenting it to the drawee and giving notice of
   its dishonor to the indorser, unless the indorser knows the
   facts.

4. SAME—INJURY OF INDORSER.
   The right of the indorser of a check to presentation and notice
   of dishonor is not changed by the fact that he suffered no
   apparent damage from the indorsee's failure in that respect.

5. SAME—CERTIFICATION OF CHECK.
   The certification of a check by the bank upon which it is
   drawn, when procured by the indorsee, is equivalent to pay-
   ment, and discharges both the drawer and the indorser,
   though the drawer in fact has no funds in the bank upon
   which the check is drawn.

6. SAME—NEW CONTRACT.
   Certification of a check by the drawee at the request of the in-

(72)

dorsee, who thereupon parts with value, creates a new contract enforceable by the indorsee against the drawee.

7. SAME—LOSS TO INDORSER.
  The act of the indorsee of a check in procuring it to be certified by the drawee discharges the indorser, notwithstanding the check is presented for payment, payment refused, and the indorser notified within the time within which notice would have been given had the certification not been procured.

8. SAME—INSOLVENCY OF DRAWEE.
  Where the indorsee of a check procures it to be certified by the drawee before parting with value, the subsequent insolvency of the drawee is immaterial on the question of the liability of the indorser

9. PRINCIPAL AND SURETY—DISCHARGE OF SURETY—RENEWAL OF ENGAGEMENT—NECESSITY OF CONSIDERATION.
  Where the indorser of a check was discharged by the indorsee's presenting it to the drawee and having it certified, the subsequent delivery by the indorser to the indorsee of a memorandum consenting to an extension of time for payment of the check did not renew the liability of the indorser as a surety, being without consideration.

Error to Wayne; Brooke, J. Submitted March 2, 1906. (Docket No. 48.) Decided February 5, 1907.

Assumpsit by the First National Bank of Detroit against Cameron Currie and Frederick S. Osborne, copartners as Cameron Currie & Company, for money had and received. There was judgment for plaintiff on a verdict directed by the court, and defendants bring error. Reversed.

*H. E. Spalding* (*A. C. Angell,* of counsel), for appellants.

*Dickinson, Stevenson, Cullen, Warren & Butzel,* for appellee.

McALVAY, C. J. Defendants were in partnership as brokers at Detroit. They dealt in stocks and bonds on the New York Stock Exchange and elsewhere. They executed orders for dealings in the New York market through other brokers. Frank C. Andrews was their

largest customer. On February 5, 1902, they had bought
for Andrews and on his order, but in their own name, as
was customary, $90,000 par value of Union Pacific con-
vertible 4 per cent. bonds for $95,000, in New York,
through Ladenburg, Thalman & Co., who were to make
delivery on payment. Shortly after noon February 6,
1902, Mr. Andrews asked Mr. Case, defendants' office
manager, to arrange to wire the price of these bonds to
New York. Mr. Case arranged with the State Savings
Bank to wire $45,000, and then asked Mr. Smith, plain-
tiff's assistant cashier, if they would wire $50,000 to New
York for Frank C. Andrews, and was told that they
would for 75 cents per $1,000. It was plaintiff's custom
to charge for remittances made by wire for Andrews,
but not to charge for remitting for defendants. When
Andrews returned, Case reported to him that the arrange-
ment could be made, and Andrews gave him two checks
on the City Savings Bank, payable to defendants' order,
for $50,000 and $45,000, respectively, directing him to have
Ladenburg, Thalman & Co. deliver the bonds to the firm
of Warren, Andrews & Co., of New York, of which firm
Andrews was a member. The $50,000 check, being the
one involved in this litigation, reads as follows:

" $50,000.                    DETROIT, MICH., Feb. 6, 1902.
   " Pay to the order of Cameron Currie and Co.
   " Fifty Thousand_____Dollars.
   " Value received, and charge the same to account of
                              " F. C. ANDREWS.
" To the City Savings Bank, Detroit."

Defendants indorsed this check as follows:

" Pay First National Bank, Detroit, Mich., or order.
                    " CAMERON CURRIE & Co."

Mr. Case deposited this check to the credit of defend-
ants' account in plaintiff bank and at the same time drew
and gave to the bank defendants' check for a like sum
payable to the order of plaintiff's cashier, and directed the
plaintiff to wire its New York correspondent to pay that

amount to Ladenburg, Thalman & Co., and paid the amount of plaintiff's charge for transferring the funds. Immediately upon the deposit of the Andrews check in the plaintiff bank, defendants wired Ladenburg, Thalman & Co., as follows:

" Please deliver to Warren, Andrews and Co., 90,000 Union Pacific convertibles free.   National Park will pay you $45,000, National Bank of Commerce for our credit.
"CAMERON CURRIE & COMPANY."

This was received by Ladenburg, Thalman & Co. at 1:12 p. m. eastern standard time.   Upon receiving the deposit of the Andrews check indorsed by defendants, and defendants' own check with their directions for wiring money, the plaintiff sent the Andrews check to the City Savings Bank for certification.   It was presented by plaintiff's messenger to Joseph Schrage, paying teller of said bank, who had authority to certify checks drawn on his bank, and who certified by writing across its face the words " Good, Schrage, Teller."   The check was then re-turned to plaintiff, which then, at 12:35 p. m. central standard time (1:35 p. m. eastern standard time) sent to its New York correspondent, the National Bank of Com-merce, a telegram as follows:

" Deposit to the credit of Cameron Currie & Co., Fifty Thousand dollars with Ladenburg, Thalman & Co. and charge to our account.
" FIRST NATIONAL BANK OF DETROIT."

After payment was made by the National Bank of Commerce, as ordered by this telegram, the payment of $45,000 having been made through another bank, the bonds were delivered between 2 and 3 o'clock eastern standard time, by Landenburg, Thalman & Co., to War-ren, Andrews & Co.

Defendants had previously had numerous transactions with Andrews in which they took his check but never had his check certified.   Plaintiff had previously received at different times checks given by Andrews to defendants,

given, as it supposed, for stocks, and did not understand anything different about this transaction. Plaintiff had itself had a number of transactions with Andrews shortly before this date, and one for a large amount on this same day, in which it received Andrews' check on the City Savings Bank. In every case it procured certification of the check before parting with the securities in payment for which it was given. Plaintiff and the City Savings Bank were members of the Detroit Clearing House. Plaintiff received this check after 12:15 p. m., the time of the noon meeting of the Clearing House at which checks payable at the different banks were ordinarily presented, and this check in the usual course of business would not be presented through the Clearing House until the next day. Defendants knew of this method of presenting through the Clearing House. On the next day this check and other certified checks amounting to $662,000, drawn by Andrews on the City Savings Bank and held by different banks, were, by agreement between them, not presented through the Clearing House on account of Andrews' statement that the presentation would embarrass the City Savings Bank. This certified check was on that day (February 7th) presented by plaintiff at the City Savings Bank, payment refused, and the check protested. Andrews' account at this bank, both when the check was certified and when payment was demanded, was overdrawn more than $900,000. The City Savings Bank had, on February 6th, when the check was certified, and on the 7th, when it was presented, funds of its own ample in amount to pay the check. Notice of protest was duly given by Mr. Smith personally handing the same to Mr. Osborne, one of the defendants. Whether Mr. Osborne saw the check at this time is not certain. There is no evidence that he ever saw it before or had anything to do with taking it. On February 8th the plaintiff received from defendants the following paper signed by Mr. Osborne in the firm name:

"We hereby consent that the time of the payment of the check of Frank C. Andrews for $50,000 dated Feb. 6th, 1902, and indorsed by us and deposited with the First National Bank for credit on our account on that date, be extended pending the action of the Bankers' Committee.

"Detroit, Mich. Feb. 8th, 1902.

"CAMERON CURRIE & CO."

No further presentation was ever made. A verdict was directed for plaintiff for the amount of the check, with interest. Defendants claim that the court erred in directing such a verdict. The contentions on their behalf are:

"1. That the certification of the check for plaintiff at its request was equivalent to payment, and operated to release them as indorsers.

"2. That plaintiff, on presenting the check, elected to take certification which is the obligation of the drawee bank to pay, and deferred formal presentation of the certified check for payment until the next day. Had it demanded payment instead of certification, or upon certification, as it should, the check would either have been paid or dishonored. If dishonored the plaintiff would not have remitted, and the bonds would not have been delivered, but remained in defendants' control. Whether paid or dishonored neither party would have lost anything. So that plaintiff's failure to demand payment at the time of certification caused the loss, and defendants cannot be held therefor."

The dispute in this case is between the indorsee and the indorsers of a check. The following rules of the law merchant fixing the rights, duties, and liabilities of indorsee and indorser each to the other, and the effect of certification by the drawee bank upon such rights, duties, and liabilities, are well settled: The undertaking of the indorser of a check is that, if not paid on presentation within a reasonable time, he will pay it, provided he is properly notified. Such reasonable time for presentation and demand for payment is admitted to be within the day following the indorsement. The indorsee, as, between

himself and the indorser, undertakes to demand payment within the day following the indorsement, and, if pay-, ment is not made, to give due notice of dishonor. This is his sole duty, and he does anything else at his peril. 2 Daniel on Negotiable Instruments (5th Ed.), § 1601; *People, ex rel. Port Chester Savings Bank, v. Cromwell,* 102 N. Y. 477. The fact that there are no funds in the account against which the check is drawn does not relieve the holder from presentation and notice of dishonor to the indorser, unless it appears that the indorser knew it. 2 Daniel on Negotiable Instruments (5th Ed.), § 1596; 1 Morse on Banks & Banking (4th Ed.), § 262, subd. 8. Nor are the rights of the indorser changed because he suffered no apparent damage by reason of failure to demand payment and give notice of dishonor to him within the required time. *Mohawk Bank* v. *Boderick,* 13 Wend. (N. Y.) 133; Tiedeman on Commercial Paper, § 442; *Gough* v. *Staats,* 13 Wend. (N. Y.) 549; *First Nat. Bank of Wymore* v. *Miller,* 37 Neb. 500.

The certification of a check by a bank that it is "good" "is similar to the accepting of a bill, for he (the banker) admits hereby assets, and makes himself liable to pay." Lord Mansfield in *Robson* v. *Bennett,* 2 Taunt. 388.

" By the law merchant of this country the certificate of the bank that the check is good is equivalent to acceptance; it implies that the check is drawn upon sufficient funds in the hands of the drawee, that they have been set apart for its satisfaction, and that they shall be so applied whenever the check is presented for payment. It is an undertaking that the check is good then, and shall continue good, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume." Mr. Justice Swayne in *Merchants' Bank* v. *State Bank,* 10 Wall. (U. S.) 604, 647.

Where the check is drawn against funds, the certification, if procured by the payee or indorsee, discharges both maker and indorser, because equivalent to payment. 2 Daniel on Negotiable Instruments (5th Ed.), § 1604;

*Metropolitan Nat. Bank of Chicago* v. *Jones*, 137 Ill. 634 (12 L. R. A. 492).

The important question in the case at bar is whether certification of a check on presentation by the indorsee, though there are no funds, is equivalent to payment. As a general proposition we think it is, as to both the maker and indorser. 2 Daniel on Negotiable Instruments (5th Ed.), § 1604, and cases cited. The rules of the law merchant are inflexible and arbitrary, and necessarily so. An indorser may always insist that the conditions requisite to make his undertaking enforceable shall be strictly complied with; namely, presentation for payment and notice of dishonor. As to the indorsee the certifying bank is bound by estoppel where he has changed his position or parted with value on the strength of the certification. *Brooklyn Trust Co.* v. *Toler*, 65 Hun (N. Y.), 187, 138 N. Y. 675, and cases cited.

In this case plaintiff parted with no value before certification, but, relying upon the certification, transferred $50,000 to New York. We find, then, that as between the plaintiff and the bank there was a new and enforceable contract created by the certification of the check. Ordinarily there would be no question but that such condition released the indorsers. In this case, however, it is claimed that, although the check had not been presented for payment, but for certification, yet upon it as certified payment was demanded, and the check was protested, and notice duly given within the time which the same would have been given had the check been presented for payment instead of certification, and because defendant indorsers have suffered no loss by reason of certification, and are in no different position than if such payment had been demanded, therefore they are not released as indorsers. The claim that no loss has occurred to defendants, which we think is not supported by the facts in the case, can be eliminated, for the reason that the liability of the indorser is not predicated upon his loss. See cases cited, supra. The case relied upon by plaintiff to sustain its

contention, and also by the court in directing the verdict, is *Irving Bank* v. *Wetherald*, 36 N. Y. 335. We think the cases are distinguishable. In that case the note had been discounted by the indorsers who received the proceeds at the time. It was, therefore, a completed transaction between the indorsers and the indorsee. The indorsee, a bank, presented the note when due at the bank where it was payable and had it certified. Later in the day the certifying bank discovered that there were no funds to pay the note, and before 3 o'clock p. m. notified the holding bank, which refused to recognize the notice. The certifying bank then took up the note, presented it at its own counter, protested it, and notified the indorsers. The certifying bank sued the indorsers. The case recognizing the well-established doctrine that a bank is estopped from denying its certification of a note as good where the presenting bank relies upon its accuracy and fails to protest the note for nonpayment and thus releases the indorsers, holds that, where the mistake in certification is discovered, and notice given to the presenting bank in time to make a re-presentation and charge the indorsers, the certifying bank is discharged from further liability, and that the certifying bank in this case took the note as a purchaser and acquired the rights of a holder and could maintain its action against the indorsers. The discounting bank received notice of the mistake before it in any way changed its position. It had not parted with value or released the indorsers on the strength of the certification, otherwise the certification would have been binding.

In the case at bar plaintiff parted with value on the strength of the certification. No enforceable contract was entered into between the parties to this suit because plaintiff never parted with value relying upon the indorsement. As between the certifying bank and the plaintiff there could be no revocation by the bank. There was no claim of mistake on the part of the certifying bank or any attempt to revoke its certification. If the certification was

in law a fraud, it was the fraud of Andrews and the certifying bank, of which neither of the parties to this suit had knowledge. The presentment of the certified check to the certifying bank, and its nonpayment was the repudiation by the band of its independent contract of certification made with the plaintiff. This check as it was when the indorsers parted with it to the indorsee was never presented for payment. The certification was made without the knowledge or consent of the indorsers. Applying to this case the decision in the *Wetherald Case* so far as it has any bearing upon the questions here involved, it is authority for holding that the certifying bank could not avoid liability on its certification, for the reason that plaintiff had parted with value on the strength of it.

It was urged in the trial court, and is urged in this court, that the certification of the check in the absence of funds did not operate to release the maker from his liability thereon, and therefore the indorsers can occupy no better position than the maker and are not released, and upon this theory the trial court decided the case. No authorities are cited to us and we have been able to find none which support this proposition. As already stated, it is a general rule of law that where the holder of a check procures its certification by the bank upon which it is drawn, the drawer and all parties thereto are discharged. The relations of the different parties to a check and the nature of their contracts have already been sufficiently stated. The certification is an entirely new and different contract. By it the certifying bank becomes the primary debtor. The holder has released the maker and indorsers, and voluntarily accepted the obligation of the certifying bank. It is not unlawful for one to draw checks upon an overdrawn account. Neither is it unlawful for the bank to pay such a check and to charge the amount thereof against the drawer. In such case, as in any other case, the holder who obtains a certification has elected to accept the

obligation of the bank instead of cash. So far as the drawer is concerned the check is paid because the holder by securing certification obtained what he desired as payment. The bank had been directed to pay cash, and when the holder obtained what he preferred to cash, it was none the less a payment. The rule which releases the maker and indorsers of a check upon certification procured by the holder, is not predicated upon the presence of funds in the hands of the certifying bank, but upon the principle that such certification operates as payment, discharging the maker whose contract has been fulfilled, and the indorser who was the guarantor of such fulfillment. If, in considering this proposition of law, the question of what relation may have been created between the bank and the maker in case of a certification in the absence of funds is eliminated as a factor, the correctness of our reasoning is in our judgment conclusive. The insolvency of the certifying bank after the certification is a circumstance which is likely to disturb our judgment of the legal question, because it occasioned this suit. That fact is entirely immaterial to the question, the rights of the parties having been fixed before that insolvency was known, and they were utterly ignorant of its possibility. Our conclusion is, therefore, that the general rule applies to this case and discharges the drawer as well as the indorsers, notwithstanding the absence of funds.

It is urged that defendants, by giving plaintiff the memorandum of February 8th, above referred to, thereby recognizing their liability and assuming and exercising control over the check, have waived any defense upon the ground that by the act of the plaintiff they were released as indorsers. At the time this memorandum was made the maker and indorsers of this check had been released by the voluntary act of the plaintiff. Instead of the original undertaking of defendants, an entirely new contract had been entered into between the plaintiff and the certifying bank, in which the certifying bank was the primary debtor.

This memorandum, then, if it operates to create a liability on the part of defendants, cannot be the reviving or continuing of pre-existing relations between the parties to this check, but must be a new contract of suretyship on the part of defendants of the certification by the bank. A thing which is absolutely different from, and foreign to, their original undertaking. The doctrine that an indorser may waive the laches or lack of formalities on the part of the holder which, in strictness, were necessary to charge him as such indorser, is recognized, but that doctrine cannot be invoked where the maker and indorser have been discharged by a payment of the obligation upon which they were liable. The defendants in this case could be held as sureties for the certifying bank only by entering into a new contract of suretyship. That contract would require a consideration. The writing referred to is based on no consideration and therefore it does not and cannot constitute such contract.

Upon the undisputed facts in this case the defendants were entitled, as a matter of law, to an instructed verdict in their favor. The court was in error in not granting their request to that effect.

The judgment is reversed, and a new trial ordered.

Carpenter, Blair, Ostrander, and Moore, JJ., concurred.