FIRST NATIONAL BANK *v.* UNION TRUST CO.

1. BILLS AND NOTES—CERTIFIED CHECKS—UNLAWFUL CERTIFICATION—BANKS AND BANKING.

A certified check in the hands of a bona fide holder is enforceable, although the drawer had no funds on deposit in the bank when it was certified, in violation of 2 Comp. Laws, § 6108.

2. SAME—PARTIES TO CERTIFICATION—HOLDER IN DUE COURSE.

Evidence that the drawer knew of a practice adopted by the payee of having checks certified before releasing securities in reliance on the checks, has a tendency to show that the drawer was one of the original parties to the certification.

3. SAME.

Such a certification being shown to have been procured at the implied request of the drawer, is as valid in the hands of a holder in due course as if procured by the drawer.

4. SAME—TRIAL—GOOD FAITH.

Instructions to the jury were not erroneous that, if the plaintiff knew the facts or believed the certification to be invalid; or had a knowledge which would render the act of taking the check dishonest or in bad faith, it could not recover.

5. SAME—NOTICE OF DEFECT.

It was not error to refuse a request to charge the jury that a scrap book in plaintiff's possession, containing a showing by the certifying bank that it had only a small amount of certified checks outstanding, was evidence tending to show notice of the illegality.

6. SAME.

Such statement was not actual notice of the defense, where the officers of the plaintiff had not examined it.

7. SAME.

It is not error to refuse a request to charge the jury which emphasizes and states the effect of certain evidence.

8. NEW TRIAL.

A motion for a new trial was properly denied where the alleged newly-discovered evidence could have been discovered with reasonable diligence, and where improper publications in local papers did not influence the jury.

Error to Monroe; Lockwood, J. Submitted January 8, 1909. (Docket No. 38.) Decided September 21, 1909.

Assumpsit by the First National Bank against the Union Trust Company, receiver of the City Savings Bank, for the amount of a certified check. A judgment for plaintiff is reviewed by defendant on writ of error. Affirmed.

*Bowen, Douglas, Whiting & Murfin* (*John C. Donnelly* and *Frederick W. Whiting*, of counsel), for appellant.

*Stevenson, Carpenter & Butzel* (*Harrison Geer*, of counsel), for appellee.

McAlvay, J. Plaintiff recovered a judgment in this suit brought by it against the City Savings Bank of Detroit upon the certification of a check for the sum of $175,-662.50 drawn on defendant bank by Frank C. Andrews payable to plaintiff. Frank C. Andrews was a heavy customer of plaintiff bank. He dealt largely in stocks and bonds upon the New York and eastern markets through his brokers in Detroit, Cameron Currie & Co. Usually, when he made purchases, drafts on Detroit would be made for the amount of the purchase, and to these drafts were attached the certificates of stock purchased, to be delivered to him when the drafts were paid. The transaction which occurred on February 5, 1902, when this check in suit was given and certified, was of this nature: the plaintiff on that date wired for Mr. Andrews to New York, cash to the amount of $75,000. It delivered to him three drafts drawn on his brokers amounting to $338,162.50, to which were attached certificates of stock of equal value. Total $413,162.50. In payment of this indebtedness it received from Mr. Andrews:

| | |
|---|---|
| Check of C. Currie & Co. on First Nat. Bank | $137,500 00 |
| Check of Frank C. Andrews on Preston Nat. Bank | 55,000 00 |
| Check of same on same bank | 45,000 00 |
| Check in suit drawn by Andrews on City Savings Bank | 175,662 50 |
| | $413,162 50 |

There is no dispute about the amount of the cash and stock charged in the above statement, or that he delivered to plaintiff the checks credited to him. When Mr. Andrews parted with possession of the check, it was not certified. It was immediately handed to a messenger of the bank with instructions to procure its certification. These instructions were at once obeyed and the certification procured. These transactions were conducted between Mr. Frank G. Smith, assistant cashier of plaintiff bank, and Mr. Frank C. Andrews. Both were witnesses in the case. They do not agree as to the time the transaction occurred, and as to whether the check was certified when the drafts and attached certificates of stock were delivered by the bank to Mr. Andrews. The assistant cashier testifies that the transaction occurred after 12 o'clock, noon; Mr. Andrews that it was at 11 o'clock a. m. The assistant cashier testified that, in accordance with imperative orders from the cashier of the bank, and in accordance with what plaintiff claims is shown by the testimony was a custom known to Mr. Andrews, the check was certified before the drafts and stock attached were delivered. Mr. Andrews testified that the drafts and certificates of stock were delivered to him before the check was certified.

Transactions previous to the one of this date, and of a similar character, in every essential particular, had occurred between these parties on each and every banking day from and after December 3, 1901. The actual time over which they had extended was longer than this; but by agreement this date was fixed as covering a sufficient length of time for the purposes of this case. The transac-

tions during that period were many and of large amounts; the total aggregating 6½ millions of dollars. They occurred after 12 o'clock noon, when the clearing house closes. They were settled each day, usually by checks of different parties, as shown in the transaction of February 5th, above. The balance of the indebtedness of Mr. Andrews was paid by a check on the City Savings Bank, which, if more than $20,000, was by the orders of the cashier of plaintiff bank always certified before the securities for which it paid were delivered to Mr. Andrews. All checks on local banks were required by the clearing house agreement to pass through it, and to be paid only by taking that course. All such checks received after 12 o'clock, noon, would not pass through the clearing house until the following day. If no other arrangement was made, each of the checks referred to, so given by Andrews to plaintiff bank, was passed through the clearing house and paid on the following day. In most instances some other arrangement was made on the morning of the day after such checks were taken. During the morning of the next day usually Andrews would call at the plaintiff bank and make an arrangement to take up the certified check and pay it to a large extent by giving plaintiff New York Exchange, which was desirable and of benefit to plaintiff to the amount of 50 cents per $1,000. Between the dates above mentioned plaintiff remitted to New York for Mr. Andrews $6,531,312.19. It received exchange from him amounting to $5,242,000, all good and paid. The majority of these certified checks taken up by Andrews were returned by him to the City Savings Bank. On the day of the transaction in dispute at 12 o'clock the only check at that time given by Andrews and held by plaintiff was paid through the clearing house. Plaintiff, at the time the check in this suit was taken, was not a creditor of Andrews or the City Savings Bank. The jury to which the case was submitted by the court returned a verdict for plaintiff for the amount claimed.

Of the errors claimed by defendant and assigned, the first which requires consideration is the refusal of the court to direct a verdict against plaintiff upon the legal propositions stated in the defendant's second request to charge, which was denied. Condensed by defendant in its brief, this request is stated as follows:

"(1) That the manner in which the plaintiff obtained the certification of the check under dispute made the contract of certification one solely between the plaintiff, the First National Bank, and the City Savings Bank, and that the two banks are the original and only parties to such contract of certification.

"(2) That, consequently, the question of *bona fide* ownership of the First National Bank of the check, or of the contract of certification, does not arise in the case. The action brought by the plaintiff is not based upon the check, but is based necessarily upon the contract of certification between it and the City Savings Bank, and therefore the circumstances surrounding the making of the contract of certification, in our view of it, control the disposition of the case, and the conduct of the First National Bank or its treatment of the certification after the completion of said certification and their dealings with Andrews or Currie, or any other person, in relation to the securities, cannot change the legal effect of the contract of certification."

It is asserted repeatedly in defendant's brief that neither the disputed fact as to whether the stocks were delivered before or after certification, nor the question of the *bona fide* ownership of the check or certification, have any material bearing upon the case. In taking this position it would appear that defendant is relying upon the prohibition of the statute against certifying checks in the absence of funds to the drawer's credit. In support of the position taken, this statute as construed by this court, and authorities cited in support of such construction, are cited and discussed. Reliance is had upon the case of *Union Trust Co.* v. *Preston Nat. Bank*, 136 Mich. 460 (99 N. W. 399, 112 Am. St. Rep. 370). In that case plaintiff brought suit against defendant to recover a balance claimed to be

due. Defendant sought to set off against this indebtedness the sum of $100,000, represented by a check of F. C. Andrews drawn on plaintiff payable to defendant and duly certified. At the time of certification Andrews was overdrawn $405,000. Defendant offered to show that on the day it was drawn, and after certification, it received this check in the usual course of business, and paid the maker full value, and at the time had no notice or knowledge of any infirmity, or that Andrews' account was overdrawn. This evidence was excluded; the trial court holding that the certification was invalid in the hands of a *bona fide* holder, and directed a verdict for plaintiff, for the amount of the deposit in defendant's hands. The opinion states:

"The sole question presented by this record relates to the correctness of this holding."

This was the question decided. This court held that a certified check in the hands of a *bona fide* holder for value is valid, although the maker had no funds in the bank when it was certified.

It is claimed that the case decided that, as between the original parties to the certification, the contract of certification, in the absence of funds, is absolutely void. The opinion discusses at considerable length the construction of prohibitory statutes, and the legislative intent in enacting the section of the banking act construed. In the opinion it is stated:

"The fact, however, that the certification is forbidden and made a crime, compels the inference that the legislature intended to avoid such certification between the original parties; and this, it is almost unnecessary to say, avoids it in the hands of every one not a *bona fide* holder."

Upon the face of the opinion it shows that this question was not before the court. There is no rule better settled than that which holds that no case is to be considered authority except upon the questions actually decided. The case relied upon settles the one question above stated.

It is claimed by plaintiff that Andrews was one of the original parties to this certification. Evidence was offered and received, tending to show that, in these dealings between the parties, the securities, which were to be released to Andrews on the payment of the drafts to which they were attached, were never released until the checks given in payment therefor were certified by the defendant bank, tending to establish a custom known to Andrews, and that such custom was followed in this case, and the check certified before the stocks were delivered to Andrews, the effect of which evidence was claimed by plaintiff to show an implied request on the part of Andrews to the plaintiff to procure certification for him. The jury decided the question as to the time of release and delivery of the stocks in favor of plaintiff. This was a material fact as bearing upon the question of consideration passing, and who were the original parties to the certification, and one which, in view of the evidence in the case upon that question, could not well have been decided otherwise. If the facts are found, as claimed by plaintiff, that it procured this certification for Andrews, wherein can such procurement be distinguished from a case where the certification is procured by the maker himself, if it is shown that plaintiff is in fact a *bona fide* holder for value? We think there can be no distinction made, and that the case comes within the rule laid down in *Union Trust Co.* v. *Preston Nat. Bank, supra.* In such view of the case the question of *bona fides* is necessarily of the greatest importance.

It is urged by defendant that, even conceding the certification of the check to have been procured by plaintiff at the request of the maker, express or implied, such fact would not operate to change the status of plaintiff as one of the original parties to the certification. Cases are cited in support of this proposition. An examination of these shows that they were cases brought against the drawers of certified checks, and were decided against the holders when the certifications were procured by them,

and in their favor when procured by the drawers. In other words, they are some of the leading cases, establishing and affirming the doctrine indicated, about which there can be no dispute in this State since the decision of *First Nat. Bank of Detroit* v. *Currie*, 147 Mich. 72 (110 N. W. 499, 9 L. R. A. [N. S.] 698, 118 Am. St. Rep. 537). In none of these cases was the suit against the certifying bank, nor was there any dispute as to whose request procured the certification. No cases are cited which decide that the original holder procuring the certification may not be a *bona fide* holder for value. This court, in *First Nat. Bank of Detroit* v. *Currie, supra,* has decided that he may be such a holder. That case arose from a transaction between Andrews and these banks similar to the transaction in the case at bar and on the following day. The suit was by the holder against the indorser. Frank C. Andrews drew his check of $50,000 payable to Currie & Co., who indorsed it to plaintiff who secured its certification, and, relying upon it, wired $50,000 to New York. It was presented for payment at the certifying bank, payment refused, and the indorser notified within the time he would have received notice if the check had not been certified. In deciding that this certification released the indorser, the question now under consideration was necessarily involved. At the time the check was certified, Andrews' account was overdrawn $600,000, and the certification was claimed to be *fraudulent* and *criminal.* To hold that contract legal and binding it necessarily followed that the payee and indorsee was held to be a *bona fide* holder for value. Counsel for defendants cite this case as correctly stating the law upon the questions involved, but do not agree that this question was necessarily decided.

It is claimed that plaintiff charged Andrews bonuses and interest because checks were taken up by him instead of going through the clearing house. The record does not sustain the claim. No bonuses were charged or interest paid for that reason. The items of interest charged

were upon the items of cash of which he received the immediate use in exchange for checks which could not be cashed until the day following.

It is claimed that the court committed error in his charge in submitting the question of good faith to the jury. A careful examination of this part of the charge shows that the court stated the law correctly. The following upon this question is taken from the charge:

" That the burden is upon the plaintiff in this case to show by a preponderance of the evidence that it is a *bona fide* holder of the check and the certification thereon for value. * * * If, after careful consideration of all the evidence, you are satisfied that the First National Bank, at the time it took the check, understood or believed that the certification was not valid, but, on the contrary, that it was made when Frank C. Andrews did not have money on deposit in the City Savings Bank to the credit of his account on the books of the bank sufficient to meet the amount of the check, then your verdict should be for the defendant. * * * If you are satisfied from all the evidence in this case bearing upon this question that on the 5th day of February, 1902, the First National Bank, or its officers, and more especially Frank Smith, its assistant cashier, had notice or knowledge of facts which would render the act of taking the certification of the City Savings Bank with the intention to rely upon it and collect it, an act of bad faith, or in effect dishonest, then the First National Bank was not a *bona fide* holder of the certified check, and your verdict should be for the defendant. * * *

" Under these circumstances, a man may take a piece of commercial paper, relying upon its being good, and he is not bound to inquire of the maker of said paper as to the facts and circumstances surrounding its making, nor as to whether there are possible defenses; but, if he have knowledge of facts and circumstances which would make it dishonest or an act of bad faith for him to take the paper with the intention to enforce the collection thereof, then he is not a holder in good faith. So, in this case, if the officers of the First National Bank, or either of them, had knowledge that the City Savings Bank was certifying these checks of Frank C. Andrews simply because he had deposited collateral in the bank, and were not certifying

upon money actually deposited in the bank and to his credit on its books, the First National Bank would not be a *bona fide* holder of this certified check."

The complaint defendant makes is, not that the law is not correctly stated, "but that there was failure in making the proper application of the principle to the case by explaining to the jury how such notice and knowledge might be established," etc.

Complaint is also made to this part of the charge, that the court did not charge as requested in three of the requests submitted, and that the jury were only permitted to consider facts and circumstances which in themselves were evidence showing actual notice and knowledge. These requests were as follows:

"(12) If the jury find that, at the time of the certification of the checks in question, Frank C. Andrews did not have actually standing to his credit upon the books of the bank the amount of said certifications, but that, on the contrary, at the times of said certification the account of the said Frank C. Andrews in the City Savings Bank was actually overdrawn in a large amount, then the jury are instructed that the certification, under the circumstances, is in violation of the provision of the State banking law, and is therefore illegal and void, and there can be no recovery thereon by the plaintiff, unless the jury find that it became the holder thereof in good faith, for full value, in the usual course of business, without notice of the defect or infirmity of the certification or the illegality thereof, and the burden is upon the plaintiff, the First National Bank, to show by a preponderance of proof that it became a holder in good faith of the said certification, for full value, in the usual course of business, without any notice of the illegality of the certification or of any defect or infirmity therein, before it is entitled to a verdict.

"(13) The jury are further instructed that if they find the facts and circumstances attending the use of certified checks, drawn by Andrews upon the City Savings Bank and purporting to be certified by it, and the manner in which the plaintiff used and treated such certified checks, were such as to invite inquiry, they will be sufficient upon which to base a finding or conclusion that the plaintiff bank did not receive the certification in question in good

faith, providing the jury think that the plaintiff abstained from making the inquiry with reference thereto from a belief or a suspicion that such inquiry would disclose the invalidity and illegality of the certifications.

"(14) Notice and knowledge of the invalidity and illegality of said certification do not mean express notice or direct knowledge, but knowledge or the means of knowledge to which the party wilfully shuts his eyes, and either actual knowledge of the illegality of the certification, or a course of conduct upon the part of the bank in its dealings with Andrews, and the certified checks, from which the jury may find that it remained wilfully ignorant thereof, will defeat the claim of good faith ownership by the plaintiff."

In so far as the substance of these requests was refused, they were not proper to be given, as either not being in point, or improperly calling attention to and emphasizing certain testimony.

Errors are also alleged for the refusal to give two certain charges relative to a scrap book of plaintiff's vice president, in which were pasted statements of the local banks, including the December statement of the City Savings Bank, showing a small amount of outstanding certified checks. It did not appear that either the vice president or Mr. Smith examined the book or the statements. The first of these requests asked the court to charge that the jury might consider this testimony as tending to show notice of illegal certification. The second request stated that the jury might consider this testimony as showing actual notice of such illegal certification. The first was properly refused for the reason that the request singled out certain testimony and stated its effect. The second was not a correct statement of law and should not have been given.

As to the court's rulings on the admission or exclusion of testimony, it is claimed by plaintiff that no exceptions were taken to the rulings complained of. An examination of the record, as far as the pages cited are concerned, confirms this claim. It is not denied in defendant's reply brief.

Error is assigned upon the denial of the motion for a new trial upon the ground of newly-discovered testimony, and because of improper publications in a local newspaper. As to the first ground, it appears that with ordinary diligence this evidence might have been produced, as it relates to matters which were within defendant's knowledge prior to the last trial. Defendant's attorneys were then in possession of transcripts of testimony of former trials as to the time when the drafts were paid; the witness now desired being one of the firm who drew the drafts. As to improper and prejudicial publications, those printed in the record were examined by the learned trial judge when the motion was decided. We agree with his conclusion that the publication did not influence the jury.

The judgment is affirmed.

BLAIR, C. J., and MONTGOMERY, HOOKER, and MOORE, JJ., concurred.