MICHAELS *v.* PINTEN.

1. TRIAL—INSTRUCTIONS—CHARGE AS WHOLE.

In an action to recover a balance claimed to be due on a building contract, where the amount of the contract was in dispute, it was not error for the trial court to use the expression "was in the neighborhood of $5,100," in charging the jury in reference thereto, it appearing from a reading of the whole sentence that the court was stating the claims of the respective parties and clearly presenting the issue to the jury.

2. SAME—INSTRUCTIONS—REQUESTS TO CHARGE.

In such action, where the fact that the plaintiff had had years of experience as a contractor and builder was a circumstance already before the jury, the trial court was not in error in refusing to call the attention of the jury especially to it.

3. SAME—REBUTTAL—EVIDENCE—ADMISSIBILITY.

Where plaintiff had testified, in support of his theory that the contract price was greater than defendant claimed, as to the cost and expense of erecting such a building, testimony of defendant and his wife, in rebuttal, that the building was leaky, was admissible on the theory that defective work did not cost as much as careful and satisfactory work.

4. EVIDENCE—CONTRACTS—GRATUITOUS WORK—BUILDING CONTRACT.

In an action to recover a balance claimed to be due on a building contract, where the amount of the contract was in dispute, testimony as to the amount of work and labor furnished gratuitously by the plaintiff was properly rejected, being irrelevant and immaterial to the issue.

5. NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—KNOWN AT TIME OF TRIAL.

It was not error to refuse a new trial on the ground of newly-discovered evidence, where such evidence was the fact that defendant had applied to a building and loan association for a loan, and, upon the record, was known to plaintiff at the time of the trial.

6. EVIDENCE—JUDICIAL NOTICE.

    The Supreme Court will take judicial notice of the fact that the trial took place in the immediate vicinity of the home office of a building and loan association.

7. NEW TRIAL—NOT FAVORED ON GROUND OF NEWLY-DISCOVERED EVIDENCE.

    Motions for new trials upon the ground of newly-discovered evidence are not favored by the courts.

8. SAME—IMPEACHMENT—LACK OF DILIGENCE.

    Where the most that can be said for newly-discovered evidence is that it might have tended to impeach defendant in some particulars, but there was lack of due diligence on the part of plaintiff, a new trial on this ground was properly denied.

9. SAME—OVERWHELMING WEIGHT OF EVIDENCE.

    Verdict *held*, not to be against the overwhelming weight of the evidence.

10. APPEAL AND ERROR—ASSIGNMENTS OF ERROR.

    Where the fact that plaintiff, by undisputed evidence, was entitled to a verdict for the sum of $28.76 was overlooked by both counsel and court until raised by plaintiff's counsel on motion for new trial, a judgment for defendant will not for that reason be set aside and a new trial granted; there having been no assignment of error upon the subject.

Error to Houghton; O'Brien (Patrick H.), J. Submitted October 21, 1919. (Docket No. 88.) Decided December 23, 1919.

Assumpsit by John J. Michaels against Philip J. Pinten for a balance due upon a building contract. Judgment for defendant. Plaintiff brings error. Affirmed.

*J. F. Hambitzer*, for appellant.

*B. H. T. Burritt*, for appellee.

STONE, J. The plaintiff is, and has been for about 20 years, a contractor and builder in Houghton county.

This suit was brought to recover a balance claimed to be due him from the defendant upon a building contract made in June, 1916. Plaintiff's claim is concisely stated in the declaration to be that on or about June 14, 1916, he made the defendant a bid to excavate for a cellar and basement, and to furnish the labor and material for erecting a dwelling house and painting and decorating the same for $5,360.37, which said bid was made in writing and delivered to defendant; that after the receipt of said bid, defendant directed the plaintiff to proceed with the erection of the building according to the plans and specifications; that said bid did not include heating and plumbing; and that on or about June 16, 1916, defendant requested the plaintiff to secure an estimate and make a bid for furnishing materials and labor for heating and plumbing said dwelling house; that plaintiff at once secured an estimate of the cost for heating and plumbing from an experienced and competent plumber, which estimate was in the sum of $1,068, which was submitted to the defendant, and the plaintiff was directed to proceed with the work, and furnish materials for said heating and plumbing, which made the contract price for work and labor and materials, including plumbing and heating, $6,428.37; that after said bid was accepted, certain modifications and changes were made, which were mutually agreed to by the parties, from time to time during the progress of the erection of said building, which the defendant agreed to pay for as extras, as shown by the bill of particulars annexed to and made a part of the declaration; that the amount of the extras, including the plaintiff's services, amounted to $1,428.76; that plaintiff furnished the labor and materials for all of the above matters, including said extras, for which defendant agreed to pay the plaintiff $7,857.13; that after the plaintiff had completed said dwelling house in accordance with said modified plans,

including said extras, the defendant accepted and occupied the said dwelling, and has ever since occupied the same as a home; that defendant has paid to the plaintiff on account of said work and labor, and for furnishing said materials, as aforesaid, $6,500, leaving a balance due the plaintiff of $1,357.13, with interest from the date of such occupancy.

The plea was the general issue with notice of settlement and payment in full. Upon the trial there was no question that the plans agreed upon by the parties were known as the "Radford plans," with certain modifications, although certain plans called the "Maas plans" were discussed. A sharp issue of fact arose as to the price agreed upon. The plaintiff was not able to produce his written bid, it being claimed that the same had been mislaid or lost, and defendant denied that he ever had one. This issue, which was a vital one, was clearly submitted to the jury by the trial court. After stating the plaintiff's claim to be as substantially set forth in the declaration, the court said:

"On the other hand, the defendant denies that the total amount of the bid or agreed price of putting up the house which was built by the plaintiff for the defendant, was the sum of $6,428.37, as claimed by the plaintiff, but insists that he, the defendant, notified the plaintiff, time and time again, that he did not want to put in excess of $5,000 into a house, and that he could not afford to do it, and that the Maas plans were submitted to him, but that his wife wouldn't have anything to do with them, and did not want them, and finally the Radford plans were gone over by the plaintiff, at the request of the defendant, and certain alterations or deductions were made from the Radford plans which brought the total down to $5,100 to complete the building according to those plans, and that that sum was to include plumbing and heating; and it is the claim of the defendant that one evening the defendant and his wife, at a meeting in the plaintiff's office, talked over the Radford plans, as finally altered

to conform with the sum of $5,100, and that the plaintiff then agreed that he would erect such a dwelling for the sum of $5,100 all complete.

"So, gentlemen, the real issue that you are called upon to determine in this case is, What was the price agreed upon to erect this dwelling? Was it the sum of $6,428.37 as claimed by the plaintiff, or was it the sum of $5,100, as claimed by the defendant? There is no dispute as to the charges for extras amounting to the sum of $1,428.76. Neither is there any dispute in regard to the amounts of payments made by the defendant, amounting to $6,500. The only question for you to determine is, What was the amount of the sum to be paid by the defendant for the building complete, according to the Radford plans?"

These figures were reiterated in the charge, and finally the court said:

"If you find that the bid for the Radford plans, as modified, was $6,428.37, including plumbing and heating, and there being no dispute about the extras, your verdict will be in favor of the plaintiff and against the defendant for the sum of $7,857.13, less $6,500 paid by defendant, and add interest at five per cent. $73.51, making a total due the plaintiff of $1,430.64. On the other hand, if you find that the bid was not for the sum of $6,428.37, but was in the neighborhood of $5,-100 as claimed by the defendant, then your verdict will be no cause of action, because if that was the contract, that is, the sum of $5,100, the plaintiff has been fully paid, both for the contract price and the extras."

An extended discussion of the evidence would serve no good purpose. It is sufficient to say that there was here a clear cut question of fact, making a sharp issue, and it was submitted to the jury in a clear charge.

All of plaintiff's requests to charge were given except the 8th, which was as follows:

"In determining the question as to the amount of the bid made by the plaintiff, for building according

to the Radford plans, you may take into consideration the years of experience of Mr. Michaels as a contractor, and the actual cost of erecting and completing said building."

The jury were instructed by the court that they might consider a paper called the "bidding sheet," as bearing upon the probabilities of the claim of the plaintiff and his bookkeeper, provided that they found this bidding sheet was made at the time they were figuring on the price which the dwelling house was to cost the defendant. The jury were also charged:

"You also have a right to determine the actual cost of the building as bearing upon the probabilities regarding the bid made";

—and two witnesses testified as to the actual cost of erecting and completing such a building; but the jury were instructed that they would consider this evidence simply in determining the probabilities of the amount actually agreed upon between the parties, because it was the amount which was actually agreed upon which was to be determined by the verdict.

Upon the examination of defendant's wife she was permitted to testify as to the leaky condition of the building and the damage done thereby to the interior. She testified:

"Well, we moved into the house in July, and I think, about September, we had a terrible rainstorm from the east, and I called Mr. Michaels. The fireplace leaked around the chimney and I think about ten windows leaked. He said, 'A driving rain like that, it would not happen again.' And these last couple of months we have had quite a little rain and it has been coming in from several places and some of the ceilings have been leaking. His man came to see them and fixed the fireplace and a carpenter came and fixed the windows."

This testimony was objected to by plaintiff's counsel because there was no claim of recoupment in the

pleadings. The court permitted the evidence as tending to show the real cost of erecting the building, holding that it did not cost as much to do defective work as it would to do careful and satisfactory work. Upon the trial the plaintiff offered testimony as to the amount of work and labor furnished gratuitously by the plaintiff for the defendant in the construction and completion of the building. This being objected to as incompetent and irrelevant, the objection was sustained, there being no claim made for such gratuitous work. The jury returned a verdict of no cause of action, and a judgment for the defendant, with costs, followed:

There was a motion for a new trial entered by the plaintiff, based upon the following reasons:

(1) That new testimony had been discovered since the trial of the case, which was not known to the plaintiff or his attorney to be in existence before, or at the time of said trial, which said newly-discovered evidence was in the form of an application for a loan of $2,500 on the house which was the subject of litigation in said suit, which application was signed by the defendant on June 21, 1917, and delivered to the Detroit & Northern Building & Loan Association at its office in Hancock, Michigan, wherein it was claimed material facts were stated by the defendant which impeached his testimony and the testimony of his wife. Those are stated in detail.

(2) That the court erred in not giving plaintiff's 8th request to charge.

(3) Error in permitting defendant's witness to testify, after objection, regarding the leaky condition of the house.

(4) That the court erred in not permitting the plaintiff and his witnesses to testify as to the amount of labor and materials furnished the defendant gratuitously, which they claimed to be upwards of $400 in amount.

(5) That the verdict was against the weight of the evidence.

The motion for a new trial was denied by the trial court, and its reasons therefor were filed. As to the first point urged the circuit judge said:

"The testimony is not newly-discovered, because upon the cross-examination of the defendant, his attention was called to the fact that he had made an application to the building and loan, and there was plenty of opportunity upon the trial to have brought in the application if it were deemed material. In the opinion of the court, the new testimony would have no tendency to alter the verdict given at the trial. While parts of the application may be considered as corroborating the plaintiff's theory, there are other parts that tend to corroborate the defendant's theory, and on the whole, it would be a question whether it would have any weight one way or the other with the jury."

2. Answering the second point urged in the motion, being the refusal to give the 8th request to charge, the trial court said:

"I have not a copy of the charge before me, but I am of the opinion that so far as the principle involved in the charge is concerned, it was given in the general charge of the court. In any event, this request would have the effect of calling the attention of the jury to the testimony of the particular witnesses in an argumentative way, and for that reason was properly refused. Taking the charge as a whole, I do not think that there was any error in refusing request No. 8."

3. In answering the third point of the motion the learned circuit judge said:

"The plaintiff was permitted to offer in evidence, and did offer in evidence testimony of estimates made as to the cost of construction of a building such as the dwelling erected for the defendant, and was also permitted to display his books of account and all of the data that would assist the jury in forming an estimate of the cost of said dwelling; and in rebuttal of that testimony the defendant was permitted to introduce evidence showing that there were certain de-

fects in the construction. I take it that the testimony offered by the defendant was material in showing the real cost of the building. It does not cost as much to do defective work as it does to do careful and satisfactory work, and the testimony was offered in support of both propositions, the plaintiff having been given full leeway to introduce anything that he had which would tend to establish his claim that the building cost as much as he claimed the bargain was. Taking the case as a whole, I can see no error in the admission of that testimony from the defendant."

4. The trial judge found upon the fourth point in the motion as follows:

"The plaintiff was not permitted to testify as to the amount of labor and materials which he furnished gratuitously. This testimony would be immaterial to show what the building actually cost, because the labor and materials furnished gratuitously were not considered in the estimates made by the plaintiff, and, therefore, could not in any sense be said to support his theory of the case. Neither did it have any tendency to refute the claim made by the defendant as to the defects in such material and parts of the work as were claimed to be defective. I am of the opinion, therefore, that the court did not err in excluding the proffered testimony as to labor and material gratuitously furnished."

5. As to whether the verdict was contrary to the great weight of the evidence, the trial judge met this proposition by saying that, while the plaintiff made a strong case in favor of his contention, in his opinion, the defendant and his wife were equally honest in their contention as to what they claimed the bargain was, and that it could not be said that the verdict was contrary to the great weight of the evidence.

The point is sought to be made by plaintiff's counsel that in any view of the evidence the plaintiff was entitled to a verdict for $28.76. Not only was no such point made upon the trial of the case, nor in the motion for a new trial, but there is no assignment of

error reaching this question. Upon that subject, however, the trial judge said:

"There has been brought to my attention for the first time at the hearing on the motion for a new trial, that in any view of the evidence, the plaintiff would be entitled to the sum of twenty-eight dollars and some odd cents. There was no such claim made at the trial. The issue was a clear cut one for an amount claimed by the plaintiff on the one hand, and the defendant claiming that he had fully paid, or overpaid the plaintiff on the other, the real issue depending upon what was the exact amount of the original contract. Under these circumstances, I feel as though it would be an injustice to reopen this case, even though it should now appear upon an exact examination of the question that the plaintiff would have been actually entitled to twenty-eight dollars under any view of the testimony. If that were the case, such a theory should have been presented at the trial, and should not be raised for the first time on a motion for a new trial."

Exception was duly taken to the order overruling the motion for a new trial. The plaintiff has brought the case into this court upon writ of error, and the errors assigned cover the same questions that were raised in the motion for a new trial; and the additional one that the court erred in overruling the motion for a new trial.

1. The first assignment of error criticizes that portion of the charge, set out by us, where the court uses the expression: "was in the neighborhood of fifty-one hundred dollars." Fairness to the trial court should at least have led counsel to give the whole sentence in which the expression was used. That appears in that portion of the charge which we have set forth, the court adding: "as claimed by the defendant, then your verdict will be no cause of action, because if that was the contract price, that is, the sum of $5,100, the plaintiff has been fully paid both for the contract price and the extras." We are not impressed that

there is any merit in this assignment of error. The court repeatedly charged the jury as to the respective claims of the parties, and it would be difficult to present an issue more clearly than was done in this case.

2. Refusal to give plaintiff's 8th request to charge. The plaintiff had testified that he had been engaged in the building business in Houghton and vicinity for about 20 years. That fact was undisputed, and was before the jury. The real gist of this request to charge, which is complained of, is that the court did not say to the jury that they might take into consideration the years of experience of Mr. Michaels as a contractor, because the court did submit to the jury the question as to the actual cost of erecting and completing said building. The fact that the plaintiff had had years of experience was a circumstance already before the jury, and we do not think it was error for the court to decline to call their attention especially to it. He had advised the jury to review carefully all the circumstances in the case, but did not call attention to any particular witness. We find no error here.

3. Did the court err in permitting the defendant and his wife to testify as to the leaky condition of the building? We think the reason given by the circuit judge in denying the motion for a new trial upon this point is sufficiently clear to show that there was no error in receiving this testimony under the circumstances; the plaintiff had gone into general testimony as to the cost and expense of erecting such a building. This testimony was offered in rebuttal of the plaintiff's claim that the building was erected in good and workmanlike manner, and was worth the amount claimed by the plaintiff.

4. We think the court's ruling in refusing to receive testimony as to the amount of work and labor furnished gratuitously by the plaintiff in the construc-

tion of the building was correct. There was no issue upon that subject, and the matter was entirely irrelevant and immaterial to the issue.

5. Did the court err in refusing to grant a new trial on the ground of newly-discovered evidence? We think not. The fact that defendant had made an application to the loan association was, upon this record, well known to the plaintiff. The money resulting from this loan had been sent by the building and loan association directly to the plaintiff. The court will take notice that the trial took place in the immediate vicinity of Hancock, the home office of the building and loan association. We agree with the circuit judge in holding that this was not newly-discovered evidence in the proper sense of that term. Motions for new trials, upon the ground of newly-discovered evidence, are not favored by the courts. The so-called newly-discovered evidence might have tended to impeach the testimony of the defendant in some particulars, but, taken as a whole, we doubt if it even did this. We think there was a lack of due diligence on the part of the plaintiff, as held by us in numerous decisions upon the question. *Canfield* v. *City of Jackson,* 112 Mich. 120; *Edwards* v. *Foote,* 129 Mich. 121, 125; *First National Bank* v. *Union Trust Co.,* 158 Mich. 94, 105; *Spray* v. *Ayotte,* 161 Mich. 595.

6. Was the verdict against the overwhelming weight of the evidence? We cannot say, after carefully reading this record, that it was. There was a sharp issue upon a single point with numerous witnesses upon each side. The case presented was one of fact, pure and simple, and the jury, under a clear and explicit charge, have answered the question by their verdict, and we do not think we should disturb that verdict.

7. Should this judgment be set aside and a new trial granted, because by the undisputed testimony there was due the plaintiff at the trial the sum of

$28.76? This did not come to the attention of either the court or counsel during the trial of the case. There was no request upon the subject. The case was tried upon the issue as to what the contract price for the erection of the building was. This balance due was overlooked, by both counsel and court, until the court's attention was first called to the fact on the argument of the motion for a new trial, it not being even mentioned in the motion itself. It is a sufficient answer to this whole question to say that there is no assignment of error upon the subject. That relating to the weight of the evidence does not reach it. So far as the $28.76 are concerned, the plaintiff could have brought action in justice's court therefor. Under 3 Comp. Laws 1915, § 13688, subd. 5, had a verdict been rendered and judgment entered for the sum of $28.76, the plaintiff could not have recovered costs against the defendant. But, on the contrary, under 3 Comp. Laws 1915, § 13691, the defendant would be entitled to a judgment against the plaintiff for his full costs, which would be more than the balance due. We think the offer made by defendant's counsel, "that the verdict be affirmed without costs to the defendant in the circuit court," a very just one.

We find no reversible error in the record and the judgment of the circuit court is affirmed, with costs of this court to the defendant, but without costs in the circuit court, by reason of defendant's waiver of such costs.

BIRD, C. J., and SHARPE, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.