BRIDGEPORT CITY BANK vs. HUGH P. WELCH.

A party who receives an indorsed negotiable note before maturity, as security for an antecedent debt, is a *bona fide* holder, and as such can collect the note from an accommodation indorser.

ASSUMPSIT on a promissory note indorsed by the defendant, tried in the superior court on an issue closed to the court, and judgment rendered for the defendant. The plaintiffs moved for a new trial. The point decided by this court will be sufficiently understood from the opinion, without a statement of the facts.

*Treat* and *Blake*, in support of the motion.

*J. H. Hubbard*, contra.

HINMAN, J. There is perhaps some room for doubt in this case whether the court intended to find that the note in question was ever transferred to the plaintiffs under any agreement that will authorize them to hold it for their own benefit. We are not entirely certain that the indefinite arrangement under which it was left with them, amounted to a pledge of the paper as collateral security for the pre-existing indebtedness of the Litchfield Bank, or that the court intended so to find. And if there was not some such agreement, then the attempt to use the paper which happens to be in their possession to secure to themselves an advantage over other creditors of the Litchfield Bank, would be contrary to the policy of our insolvent law, and ought not to be sustained; certainly not against the defendant, who only indorsed the paper for the accommodation of other parties. But the case, we suppose, was disposed of in the superior court upon the idea that the law was so that the plaintiffs could not recover even if they were correct in their claim as to the fact, because the court was of opinion that the transferree of negotiable paper, received as collateral security for a pre-existing indebt-

edness, is not a *bona fide* holder of it, who has taken it in the course of business, and therefore could not enforce it against the party who had indorsed it without consideration. If, therefore, we should dispose of the case upon the ground that no agreement, such as was claimed by the plaintiffs, had been found by the court, we might do them injustice, because the court might have found the fact as they claimed it had it been supposed that it would have affected the final result. We therefore, for the present purpose, have construed the finding as claimed by the plaintiffs, leaving it for the defendant, if he is so advised, to require a more definite and specific finding as to whether the note was in fact transferred to the plaintiffs as security, or was only deposited with them for safe keeping, under an imperfect understanding that some subsequent agreement would be made in respect to it.

Assuming then that the note was left with the plaintiffs as collateral security for a debt due them, the question in the case is, whether, as against an accommodation indorser, such a transfer is in the usual course of business, and conveys such a title to the transferree as will enable him to collect the note in order to secure himself by applying the avails to such pre-existing indebtedness.

In the case of *Brush* v. *Scribner*, 11 Conn., 388, such a transfer received in payment of a pre-existing debt was held to be a *bona fide* transfer for value, and, as such, entitled the holder to recover against such an indorser. In the court of errors the question involved in this case did not arise in that case. It did however arise in the superior court, and was decided against the plaintiff, and therefore formed a precedent in the superior court, upon the authority of which it is understood that the decision in this case was made. The cases bearing upon the question involved in the decision of *Brush* v. *Scribner*, in the court of errors, were very fully examined in the able and learned opinion given in that case, the correctness of which we believe has never been questioned in this state. Considering that question to have been correctly settled, the question in this case is narrowed down to the point whether there is in law any distinction as to the *bona fides* and regular

business character of the transaction, between a transfer of a note in payment of a pre-existing debt, and such a transfer as a pledge or security for the future payment of such a debt. Now if such a question as this was put to any man not in the habit of being controlled by precedents, or of reasoning upon technical principles, it would seem that the only answer must be that there can be no such distinction. Such a man could hardly be expected to perceive any good reason why he should be allowed to take paper in payment of a debt, and at the same time be denied the right to take the same paper as security for its future payment. And if we refer to the legal reason for holding parties to negotiable paper liable to third persons who have taken it in the course of trade, it seems to apply with equal force whether received in payment or as security for a debt. Negotiable paper which passes by delivery is treated as a species of money, which the necessities of trade require and therefore render current, and which is subjected to the same rules as the money it represents. Best, J., in *Wookey* v. *Pole*, 4 Barn. & Ald., 1. If then there are no good reasons for such a distinction as has been claimed, are there any authorities binding upon us which require that we should recognize it as an established one? We know that at one time such a distinction seemed to be made in New York, and was followed to some extent in other states, founded we believe in the first instance on the case of *Bay* v. *Coddington*, 5 Johns. Ch., 54. And if Chancellor Kent did not attempt to establish it in that case, it was undoubtedly acted upon by some of the members of the court of errors when the same case was carried to that court, (*Coddington* v. *Bay*, 20 Johns., 637,) and has since been followed by other decisions in New York and elsewhere. We think, however, that the weight of authority is decidedly the other way, and accords with what we regard as the good sense of the matter. We have not been referred to any English case in which such a distinction is made, and we suppose the law in England to be well settled in accordance with our views. A claim of this sort, which was made in the cases of *Bosanquet* v. *Dudman*, 1 Stark., 11, and *Heywood* v. *Watson*, 4 Bing., 496, was unqualifiedly overruled,

and we know of nothing to the contrary since those decisions were made. And upon a doubtful point of commercial law we certainly should regard the English decisions with as much respect at least as any other which are not absolutely binding upon us. To the same effect was the decision of the supreme court of the United States in the case of *Swift* v. *Tyson*, 16 Pet., 15; and in the state of Massachusetts the decisions are numerous and uniform to the same effect. *Chicopee Bank* v. *Chapin*, 8 Met., 40; *Stevens* v. *Blanchard*, 3 Cush., 169; *Stoddard* v. *Kimball*, 4 id., 604; *S. C.*, 6 id., 469; *Hilton* v. *Smith*, 5 Gray, 400. See also *Branhall* v. *Beckett*, 31 Maine, 205.

We are satisfied therefore that upon authority as well as principle the decision of the superior court on this point was incorrect; and we accordingly advise a new trial.

In this opinion the other judges concurred.

New trial advised.