## KING v. BOWLING GREEN TRUST CO.

(Supreme Court, Appellate Division, First Department.  June 2, 1911.)

1. BANKS AND BANKING (§ 127*)—DEPOSIT OF BILL OR CHECK—TRANSFER OF TITLE.

A deposit in a bank of a bill or check in the ordinary course of business, whereby the depositor receives a credit against which he may draw operates to transfer the title to the bank, and it has recourse to the depositor only in case the paper is dishonored.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 304, 310; Dec. Dig. § 127.*]

2. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—DEPOSIT OF CHECKS—DELIVERY FOR COLLECTION AND CREDIT.

The payee of a check opened an account with C. Trust Company, and deposited currency, and the check indorsed in blank, without instructions as to the check and received credit therefor.  The check with other items was sent for "collection and credit" to B. Trust Company, and the check was collected and credited on the day of its receipt by B. Company.  After the close of banking hours on that day, C. Company closed its doors, but B. Company did not learn of that fact until the following morning.  There had been extensive dealings between the two companies and C. Company had a checking account with B. Company, and was accustomed to send to it bills for collection and credit.  During the day, B. Company credited the check, it paid or certified drafts drawn against the checking account of C. Company, and at the close of business the checking account was overdrawn.  Held, that the payee of the check could not recover from B. Company because the relation of C. Company to the payee had changed to that of debtor and creditor.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–1221; Dec. Dig. § 315.*]

3. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—COLLECTIONS—BONA FIDE HOLDER FOR VALUE.

The payee of a check opened an account with a trust company, and deposited the check indorsed in blank, and received credit therefor.  The trust company sent the check to its correspondent for collection and credit.  The correspondent collected and credited the amount of the check without notice that the check belonged to a customer of the trust company.  The correspondent paid and certified checks drawn by the trust company.  Held, that the correspondent was a bona fide holder of the check for value, and was not liable to the payee on the insolvency of the trust company.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 315.*]

4. BANKS AND BANKING (§ 315*)—TRUST COMPANIES—DEPOSIT OF CHECKS—DELIVERY FOR COLLECTION—LIABILITY.

A holder of a check deposited it with a trust company for collection, and the company gave a receipt that it had received the check for collection, and forwarded the check to its correspondent, stating that the check was sent for collection.  The check was received by the correspondent after the company was in the hands of a receiver.  The correspondent collected the check.  Held, that the correspondent was responsible for the proceeds to the holder of the check, who remained the owner.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1219–1221; Dec. Dig. § 315.*]

Appeal from Trial Term, New York County.

Action by George H. King against the Bowling Green Trust Company.  From a judgment for plaintiff entered on the verdict of the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

jury, and, from an order denying a new trial, defendant appeals. Reversed, and new trial granted, unless recovery be reduced.

Argued. before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

John Quinn, for appellant.

Henry B. Twombley, for respondent.

MILLER, J. On June 20, 1907, the Congregational Church Building Society drew its check on the Mercantile Trust Company of New York for $2,500 payable to the Fourth Congregational Church of San Francisco. The latter opened an account with the California Safe Deposit & Trust Company on September 30, 1907, and on October 24, 1907, the treasurer deposited said check, together with $17.95 in currency, with the said trust company, and was credited by the latter with the sum of $2,517.95. The check with other items aggregating $6,473.47 was sent "for collection and credit" to the defendant and was received by it on the morning of October 30, 1907. The defendant forthwith credited said amount to the California Safe Deposit & Trust Company, and on that day presented the check, with other items, to the Mercantile Trust Company, and received in payment the latter's check, drawn on the National Bank of Commerce, which on that day was deposited with the drawee and by it credited to the account of the defendant. At 2:15 p. m., on said day, San Francisco time, and at 5:15 p. m. New York time, after the close of banking hours, the California Safe Deposit & Trust Company closed its doors, but the defendant did not learn of that until the following morning. This suit is brought by the plaintiff as assignee of the Fourth Congregational Church of San Francisco to recover the amount of said check, with interest.

Said check, when deposited, was indorsed in blank and the person who deposited it in behalf of the payee testified that no instruction was given the California Safe Deposit & Trust Company at the time. On the pass book delivered to the treasurer of the said church society when the account was opened was the following:

"This bank in receiving out of town checks and other collections, acts only as your agent and does not assume any responsibility beyond due diligence on its part the same as on its own paper."

And on the deposit slip, upon which was éntered the said deposit of $2,517.95, was the following:

"In receiving checks on deposit payable elsewhere than in San Francisco, this bank assumes no responsibility for a failure of any of its direct or indirect collection agents and shall only be held liable when proceeds and actual funds or solvent credits shall have come into its possession. Under those conditions items previously credited may be charged back to the depositor's account. In making this deposit the depositor hereby assents to the foregoing conditions."

There had been mutual and extensive dealings between the defendant and the California Safe Deposit & Trust Company for some time prior to the transaction in suit. The latter had a checking account with the former, and was accustomed to send to it bills for collection

and credit in two ways:  (a) By a so-called cash letter;  (b) by a so-called collection letter.  The two differed only, in this: that the latter contained the following, not found in the former, viz., "credit only when paid and report by number or date.  Do not hold our collections but return promptly if not honored."  The check in question, with others, was transmitted with a cash letter.  Another cash letter was also received by the defendant from the California Safe Deposit & Trust Company on October 30, 1907, containing an item on Chicago for $12,500, which, however, was not credited because of the fact that it was drawn on an out of town bank.  Of course, the defendant upon receiving bills for collection, whether transmitted with a cash or a collection letter, was not obliged immediately upon their receipt and before collection to credit them unless it chose to do so.  The defendant did not maintain a checking account with the California Safe Deposit & Trust Company, but it sent bills to the latter for collection.  On the morning of October 30, 1907, the checking account of the latter with the defendant was overdrawn $9,645.35.  During that day the defendant in due course of business paid or certified drafts drawn on that account amounting to $8,392.54, and it sent bills for collection amounting to $293.80.  The California Safe Deposit & Trust Company was indebted to the defendant on that day to the amount of $92,-478.56 on bills which had theretofore been sent to it for collection, and at the close of business its checking account with the defendant was overdrawn in the sum of $7,069.08.

[1] While the deposit of a bill or check in the ordinary course of business, the depositor receiving a credit against which he can draw, has the effect of transferring the title (Briggs v. Central Trust Co. of N. Y., 89 N. Y. 183, 42 Am. Rep. 285; Metropolitan Natl. Bank v. Lloyd, 90 N. Y. 530; Cragie v. Hadley, 99 N. Y. 131, 1 N. E. 537, 52 Am. Rep. 9), I do not think that was the effect of the original deposit involved in this case.

[2] The words on the deposit slip must be read into the contract. If title had once passed to the California Safe Deposit & Trust Company, it would have had recourse to the depositor only in case the paper was dishonored, but by its contract it assumed no responsibility until it had received actual funds or solvent credit.  Up to that time it was, then, merely the agent of the depositor.  However, the check was actually credited by the defendant and paid by the drawee during banking hours on the 30th of October.  The California Safe Deposit & Trust Company, then, had received and accepted solvent credit for the check before it failed, and its relation to its depositor had changed from that of agent and principal to that of debtor and creditor.  The precise form of the letter of transmittal is immaterial.  The check was sent "for collection and credit," and it was collected and credited on October 30, 1907.

[3] Moreover, the defendant was a bona fide holder for value. While the learned trial court submitted to the jury the question whether the defendant had notice that the check belonged to the customer of the California Safe Deposit & Trust Company, there is no evidence in the case that it had such notice, and the undisputed evi-

dence shows that it did not. For anything that appeared on the paper, and that was the only thing to give the defendant notice, the California Safe Deposit & Trust Company was the owner of it. It was not to be presumed that the check was originally deposited only for collection, as the cases hereinbefore cited show.

Of course, it is impossible to say that the defendant did anything upon the faith of the said trust company's ownership which it would not otherwise have done. However, because of all the mutual dealings, of which that was a part, it suffered a general balance in its favor to remain and it paid and certified checks. Prior to the passage of the Negotiable Instruments Law (chapter 38, Consol. Laws 1909; chapter 43, Laws 1909), and from the time of the decision of Codding-ton v. Bay, 20 Johns. 637, 11 Am. Dec. 342, it was the law of this state that, in order to constitute one a holder for value as against a true owner, it was necessary that he part with some present consideration. A different rule prevailed in the federal courts and in many of the states (vide Bank of the Metropolis v. New England Bank, 1 How. 234, 11 L. Ed. 115; Id., 6 How. 212, 12 L. Ed. 409; Wood v. Boylston Natl. Bank, 129 Mass. 358, 37 Am. St. Rep. 366). The negotiable instruments law provides:

"Sec. 51. What constitutes consideration. Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time.

"Sec. 52. What constitutes holder for value. Where value has at any time been given for the instrument, the holder is deemed a holder for value in respect to all parties who became such prior to that time."

While no case in this state on the point has been called to our attention, it seems plain that those sections were intended to bring the law of this state into harmony with that of the other states and of the federal courts. If the depositor had indorsed the check "for collection," a different question would be presented.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event. All concur.

INGRAHAM, P. J. I concur with Mr. Justice MILLER in the reversal of this judgment. The complaint states two causes of action. His opinion relates to the first.

This cause of action seems to be based upon the claim that the church trustees the plaintiff's assignor was the owner of a check for $2,500 drawn by the Congregational Church Building Society upon the Mercantile Trust Company of the City of New York to the order of the church trustees, and that they had deposited this check with the California Safe Deposit & Trust Company of San Francisco, Cal., for collection; that the California Trust Company had forwarded such check to the defendant for collection; that on October 30, 1907, the defendant collected the said check from the Mercantile Trust Company, the drawee thereof, the sum of $2,500, on which same day the California Trust Company was put in charge of a receiver on the ground of insolvency; that the defendant had not remitted the pro-

ceeds of the check to the California Trust Company or its representatives or to the trustees of the church; and that the trustees of the church had assigned their claim against the defendant to the plaintiff.

The crucial question presented is whether the defendant became in consequence of this transaction the debtor of the trust company or the debtor of the trustees of the church. Assuming that the check was received by the trust company from the trustees of the church under an arrangement by which the title to the check did not vest in the trust company upon deposit, it was authorized to collect the check, and, when actually collected by it or its agent, the proceeds of the check became the property of the trust company, and the trust company then became indebted to the trustees of the church for the amount called for by the check. In pursuance of this arrangement, the trust company forwarded the check to the defendant; and, assuming that it was received by the defendant for collection, it proceeded promptly to collect the check. On the morning that it received the check by mail it was presented to the drawee and paid and the defendant received at once the proceeds. The check had thus been actually collected and the proceeds received by the defendant as the agent of the California Trust Company and credited to its account. The transaction was completed, the check collected, and the California Trust Company had actually received the proceeds by defendants crediting its account therewith. The proceeds therefore became the property of the defendants, who became indebted to the California Trust Company, and the California Trust Company became indebted to the trustees of the church for the amount. If the defendant had failed after 3 o'clock on October 30th, there could have been no question but what the California Trust Company would have been responsible to the plaintiff for the amount that had been collected by the defendant, its agent; but after the money had been actually received and credited to the California Trust Company, and after the close of business on that day, the California Trust Company failed. That failure, as I understand it, could not at all affect the relation of the church trustees, the California Trust Company, or the defendant to this sum of money thus collected. The money had become the money of the defendant. For that the defendant was responsible to the California Trust Company and the California Trust Company was responsible to the church trustees. Upon no theory can it be said that the trustees had any claim against the defendant to recover either the check or its proceeds.

[4] The second cause of action was based upon a check drawn by a bank in Texas on a bank in New York to the order of one Neal for $500, which was subsequently indorsed and delivered to one Simon. This check was on October 29, 1907, deposited by Simon with the California Trust Company for collection, the trust company giving a receipt that it had "received for collection from I. Simon a check on the National Park Bank, New York, $500." The California Trust Company forwarded this $500 draft to the defendant in a letter dated October 29, 1907, which stated that the check was sent for collection. This check was received by the defendant on the 4th of November, 1907, after the California Trust Company had suspended payment and

was in the hands of a receiver, and on November 4, 1907, the defendant collected the check and received the proceeds.

The crucial difference between this claim and the claim for the $2,500 check embraced in the first cause of action arises from the fact that it was received by the trust company specifically for collection, was forwarded to the defendant specifically for collection, and was not collected until after the trust company had failed. Neither the trust company nor the defendant ever acquired title to the check, and, when the money was received by the defendant, it was received on account of the owner of the check, namely, Simon, and the defendant with notice of that fact before it had changed its condition in any way was clearly responsible to Simon as the owner of the check for the amount that it had collected. Simon remained the owner of the check, the defendant had received the proceeds of the check, the California Trust Company having failed before it had received such proceeds, the defendant was responsible, not to it, but to the real owner of the check, and the defendant is therefore responsible to the plaintiff in this action for its proceeds which it had collected.

It appears, therefore, from the undisputed facts that the plaintiff was not entitled to recover for the $2,500 check, but was entitled to recover for the $500 check, and, unless the plaintiff wishes to reduce the judgment to the sum of $500 and interest, there must be a new trial.