12 Conn. 28, upon which defendant relies, is not in point, for there the parties for whose benefit the action was brought were entitled to the estate of the deceased administratrix, and hence acquired their right after the devastavit.

I think, therefore, that the judgment should be modified, by reducing it to $207.99 and taxable costs, and, as modified, affirmed, without costs.

Judgment modified, by reducing it to $207.99 and taxable costs, and, as modified, affirmed, without costs.

MADDOX and CRANE, JJ., concur.

---

(91 Misc. Rep. 220)

### BROWN v. ROWAN.

(City Court of New York, Trial Term.   June 10, 1915.)

1. BILLS AND NOTES ⬤⟿453—"HOLDER IN DUE COURSE"—STATUTE—CONSTRUCTION.

Under Negotiable Instruments Law (Consol. Laws, c. 38) § 91, providing that a "holder in due course" is one who has taken the instrument when regular on its face, before it was overdue, without notice of previous dishonor, in good faith, for value, and without notice of any infirmity in the instrument or defect in the title of the person negotiating it, the payee of a note may be holder in due course thereof.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1344–1351; Dec. Dig. ⬤⟿453.

For other definitions, see Words and Phrases, First and Second Series, Holder in Due Course.]

2. BILLS AND NOTES ⬤⟿359—ANTECEDENT DEBT AS VALUE—CONSIDERATION—BONA FIDE HOLDER.

Under Negotiable Instruments Law, § 91, providing that a holder in due course is one who has taken the instrument for value, etc., and section 51, providing that an antecedent or pre-existing debt constitutes value, where a debtor delivered to his creditor a note of a third person, payable to the creditor, crediting the debtor on a book account with the face of the note, such payee was a holder in due course for value.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 924–936; Dec. Dig. ⬤⟿359.]

Action by Morris A. Brown against William A. Rowan.   Verdict for plaintiff, and defendant moves that it be set aside.   Motion denied.

Schuyler Meyer, of New York City, for plaintiff.

Whiteside & Stryker, of New York City (George Whiteside, of New York City, of counsel), for defendant.

RANSOM, J.   The verdict directed in favor of the payee of the promissory note in suit should stand.   Rowan, the maker, owed money to Schwanner Bros., and had a deal on with them under which he was to pay them $5,000 if a certain steam yacht was sold.   Schwanner Bros. owed $4,000 to the plaintiff, Brown, for merchandise, and he was pressing them for payment.   Schwanner Bros. told Rowan this, and obtained from Rowan his note for $1,000, payable to the order

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

of Brown. The Schwanners took this note to Connecticut and gave it to Brown, who credited it in reduction of their debt to him, and gave them a receipt which read:

"New London, Dec. 28, 1914.

"Received from Schwanner Bros. Co. Wm. A. Rowan note, dated Dec. 24, one thousand dollars, to be applied on acct.

"$1,000.                                                          M. A. Brown."

The yacht was not sold, and the note was not paid. Rowan claimed that the note was given by him to Schwanner Bros. under an agreement that its payment should be contingent upon the sale of the yacht. Brown had never seen or had communication with the maker; he knew nothing of any agreement between the Schwanners and Rowan; he indisputably took the note before its maturity, in actual good faith, with no notice or knowledge of facts fairly putting him upon inquiry as to possible equities between Rowan and Schwanner Bros. Cheever v. Pittsburg Ry. Co., 150 N. Y. 59, 44 N. E. 701, 34 L. R. A. 69, 55 Am. St. Rep. 646. Accordingly there can be no doubt of Brown's right to enforce payment as a holder in due course (Neg. Inst. Law, § 91), if (1) the payee of a negotiable instrument may in New York claim the prerogatives of a holder in due course; and (2) the circumstances of the plaintiff's receipt of the note on account of the Schwanners' antecedent indebtedness to him were such as to constitute him a holder "for value," within the meaning of the Negotiable Instruments Law as now construed in this state.

[1] These two points of controversy present interesting questions as to the extent of New York's conformance to the interpretation which has been put upon the Negotiable Instruments Law by the courts of a great majority of the other states which have enacted the uniform statute. Excepting an inferential reference in Schreyer v. J. S. Bailey & Co., 97 App. Div. 185, 89 N. Y. Supp. 870, the question whether, under that statute, the payee of a promissory note may qualify as a holder thereof in due course, upon compliance with the requirements of section 91 of the act, seems never to have been passed upon in a reported decision in this state. Outside of New York, however, the uniform interpretation of the parallel provisions of the statute has been to confirm and continue the rule of the common law that a payee might claim the protection accorded any other bona fide holder for value. Boston Steel & Iron Co. v. Steuer, 183 Mass. 140, 144, 66 N. E. 646, 97 Am. St. Rep. 426; Thorpe v. White, 188 Mass. 333, 334, 74 N. E. 592; Mersick v. Alderman, 77 Conn. 634, 60 Atl. 109, 2 Ann. Cas. 254; South Boston Iron Co. v. Brown, 63 Me. 139; Campbell v. 4th National Bank, 137 Ky. 555, 126 S. W. 114; Glascock v. Rand, 14 Mo. 550; American Exchange Nat. Bank v. Armstrong, 133 U. S. 443, 453, 10 Sup. Ct. 450, 33 L. Ed. 747; Hodges v. Nash, 141 Ill. 391, 31 N. E. 151; Cagle v. Lane, 49 Ark. 465, 5 S. W. 790; Crawford's Ann. Neg. Inst. Law, § 91, note B; Norton on Bills and Notes, p. 416, note 3; Daniel on Negotiable Instruments, § 178; 1 Parsons on Bills and Notes, pp. 181, 199. The case of Vander Ploeg v. Van Zuuk, 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275, is sometimes referred to as sustaining a contrary

view, but the issue therein was so complicated by the element of fraud and the perfidy of the plaintiff in filling in certain blanks in the note otherwise than as directed by the maker that I cannot regard this decision as essentially divergent from the uniform decisions in the other states under the Uniform Act.

Learned counsel for the defendant makes a most persuasive argument for a ruling in this state that a payee be given no immunity from equities existent between the maker and his immediate transferee; but these considerations are far outweighed, in my opinion, by the importance of nation-wide uniformity in the law as to commercial paper and by the many evidences that, in enacting the uniform statute, the Legislature sought to secure uniformity in the application of the law, and not merely in its phraseology. When a question arises under one of the uniform statutes, and courts of this state have not yet passed upon the interpretation of the portions of the statute involved, I conceive it to be the duty of the trial courts, in the interests of a real uniformity in the application of these commercial enactments, to adopt and follow here the interpretation adopted by the courts of other commonwealths.

[2] There remains the question whether the enactment of sections 51 and 91 of the Negotiable Instruments Law has altered, as to negotiable instruments, the earlier rule of New York courts as to the sufficiency of an antecedent or pre-existing debt as "value" and "consideration." The defendant contends that Brown took the note only as collateral security for a pre-existing debt, without extension or forbearance, or parting with present value, and that this could not make him a holder "for value." I do not think that this claim of holding as collateral security is a fair inference from the record, in view of what was said at the time the note was delivered, and in view of the wording of the receipt given, the book entries made, Brown's forbearance from pressing the Schwanners for further payment during the period of the note, and the fact that, when the note was not paid, Brown did not charge it up against the Schwanners, or revive his claim against them, but sued Rowan upon the note. The plaintiff, moreover, calls attention to the fact that the note was delivered to him, and all his transactions concerning it had, in Connecticut, and he contends that, under the controlling law of that state (Staples v. Nott, 128 N. Y. 403, 406, 28 N. E. 515, 26 Am. St. Rep. 480; Daniel on Negotiable Instruments, § 868), negotiable paper taken merely as collateral security for an antecedent debt is taken for a valuable consideration (Bridgeport City Bank v. Welch, 29 Conn. 475, 477; Rockville National Bank v. Citizens' Gas L. Co., 72 Conn. 576, 581, 45 Atl. 361; Roberts v. Hall, 37 Conn. 205, 213, 9 Am. Rep. 308). Neither the law of Connecticut nor any divergence between the New York and Connecticut interpretation of identical sections of the Negotiable Instruments Law, were, however, proved upon the trial, and the question remains whether section 51, through its pronouncement that "an antecedent or pre-existing debt constitutes value," has brought New York into substantial accord with the rule prevailing in Connecticut and the great majority of the states which have adopted the uniform statute.

That such was the intent, and that such has been the effect, of the enactment of section 51, seems reasonably clear under recent decisions. King v. Bowling Green Trust Co., 145 App. Div. 398, 402, 129 N. Y. Supp. 977. The record at bar sufficiently shows, as I recall the testimony without the aid of the stenographer's minutes, the extinction pro tanto of the Schwanners' debt to Brown upon the latter's receipt of the note (Roseman v. Mahoney, 86 App. Div. 377, 83 N. Y. Supp. 749; Bank of America v. Waydell, 103 App. Div. 25, 92 N. Y. Supp. 666, affirmed 187 N. Y. 115, 79 N. E. 857), and also Brown's forbearance from demanding payment of the balance due him. The trend of decision, moreover, has undeniably been to make section 51 the medium of a full conformance of the law of this state to the rule prevailing in the federal courts and the other states under the Uniform Act, and to hold that proof of extension, forbearance, or other parting with present consideration is not requisite. Maurice v. Fowler, 78 Misc. Rep. 357, 138 N. Y. Supp. 425; Martin L. Hall Co. v. Todd (Sup.) 139 N. Y. Supp. 111; Broderick & Bascom Rope Co. v. McGrath, 81 Misc. Rep. 199, 142 N. Y. Supp. 497; Milius v. Kauffmann, 104 App. Div. 442, 93 N. Y. Supp. 669; King v. Bowling Green Trust Co., 145 App. Div. 398, 129 N. Y. Supp. 977; Lehrenkrauss v. Bonnell, 199 N. Y. 240, 92 N. E. 637. These recent decisions manifest a marked disposition to bring the New York rule into complete agreement with that of other states on this subject, even as to the taking of commercial paper as security or collateral for a pre-existing debt. As was said by Mr. Justice Page in the Broderick & Bascom Rope Co. Case, supra:

"The desirability of uniformity in the laws of various states with reference to negotiable instruments is so obvious, the legislative intent to harmonize our theretofore conflicting decisions with those of other jurisdictions is, to my mind, so clearly expressed, that full effect should be given thereto."

I am clear that, giving the defendant the benefit of all reasonable inferences proper upon a motion of this character, the plaintiff must nevertheless be deemed a holder of this note "for value" and in due course, under the Negotiable Instruments Law as now interpreted in this and other states.

The motion to vacate the directed verdict is denied. The defendant may have 10 days' stay of execution and 30 days within which to make a case on appeal.