### THE GENEVA NATIONAL BANK, Plaintiff, *v.* JOHN B. O'BRIEN, Defendant.

Supreme Court, Ontario County, August, 1923.

Negotiable instruments — bona fide holder for value — banks and banking — agency — when bank president cannot bind bank in transaction in which he is personally interested..

On the day that the president of the plaintiff bank, who was also the president of a certain company, received from defendant, the vice-president of the company, his promissory note for $10,826 payable to the order of plaintiff, he deposited it with plaintiff to the credit of the company. The said president and the defendant owned $50,000 of the stock of the company, which, as a borrower from plaintiff, owed it about $137,000. In an action upon the note, *held,* that plaintiff was a *bona fide* holder for value and that defendant was liable in the absence of proof of a valid agreement releasing him from liability.

The defendant having failed to establish the allegations of his answer that the note was given for the accommodation of both the plaintiff and the company and that plaintiff through its president agreed that defendant should not be liable upon the note, plaintiff was entitled to judgment for the amount of the note, with interest.

Under the rule of law that no person can act as agent in a transaction in which he has an interest or to which he is a party opposed in interest to his principal, defendant must have failed as matter of law even had he succeeded in establishing as a fact that the alleged agreement was made.

ACTION upon a promissory note.

*Lansing C. Hoskins* and *W. S. O'Brien,* for plaintiff.

*Moot, Sprague, Brownell & Marcy* (*S. Fay Carr,* of counsel), for defendant.

THOMPSON, J. On the 17th day of October, 1921, while acting as president of both plaintiff and the Maine Pulp and Paper Company, William O'Hanlon received from defendant his note for $10,826, payable to the order of plaintiff, and at its place of business, on November 16, 1921; and on the same day deposited it with plaintiff to the credit of the company. Defendant was vice-president of the company and both he and O'Hanlon owned $50,000 of its stock. The company was a large borrower of the plaintiff and owed it about $137,000. Defendant resists payment of the note, and asserts failure of consideration; that it was given for the accommodation of both plaintiff and the company, and that plaintiff agreed, through O'Hanlon, that he should not be liable thereon. Discussing these questions in their order, let it first be said that defendant is the maker of the note; that it was given for a valuable consideration, and that plaintiff is its *bona fide* holder for value,

the note not having been given for its accommodation. Neg. Inst. Law, §§ 51, 52, 55; *King* v. *Bowling Green Trust Co.*, 145 App. Div. 398; *Chelsea Exchange Bank* v. *Warner*, 202 id. 499; *Kelso & Co.* v. *Ellis*, 224 N. Y. 528, 536.

So defendant, who is the maker of this note, is liable thereon to the plaintiff unless he has succeeded in establishing that plaintiff has made a valid agreement releasing him from liability for its payment.

While doubtless it now seems to defendant that at the time he made this note the assurance given him by O'Hanlon, " that it was simply to be an accommodation; absolutely no liability, and never be called upon to pay the note," was in full contemplation of the misfortune that thereafter came to the company, the testimony in the case affords no support to such a conclusion. Possible bankruptcy of the company and its effect on the notes was not discussed, and apparently it was not thought of. Of course, there was no liability to the company, or to the plaintiff, if the company paid the notes. And there is ground for the impression that the minds of these parties were undisturbed by thought of possible reverses preventing the paper company from promptly meeting its paper, and that they felt no insecurity in lending the use of their names to its obligations.

These gentlemen believed in their company; their money was invested in it; they had sold its stock; they had accepted office under it; they were its acting executives. The making of these notes was but the normal response to the appeal of the bank; the loan was large and they desired to distribute it. It is unthinkable that the parties sought to make the bank a co-investor, or a sharer of their losses. Nor do I find suggestion that the bank had threatened to sue the indebtedness or call the loans; or that it had refused, or was about to refuse, further credit. This was the customary and not unreasonable request of a bank which was furnishing money to operate the business of a corporation, to those who owned the stock of the corporation, and directed the ways in which the money should be used, that they should assume some responsibility for its return; and to this reasonable request, and in the same spirit, the defendant gave this note and thus loaned the company his credit.

I must, therefore, refuse to find as matter of fact, that the plaintiff bank, through Mr. O'Hanlon, or otherwise, made any agreement that this defendant should not be liable on the note.

But defendant must have failed as matter of law even had he succeeded in establishing as a fact that such agreement was made through O'Hanlon; being president of the bank as well as president

of the company, he could not act in this double capacity. *Fowler* v. *Walch*, 119 App. Div. 542; *Williams* v. *First National Bank*, 43 id. 239, 241; 5 Cyc. 466; 38 id. 1516.

"We think the rule may be stated to be: An officer of a bank cannot bind the bank by an agreement adverse to its interests made with another party, when such party and officer are at the time such agreement was made engaged in serving their own interests or the interests of another corporation in which they are jointly interested and where the sole purpose of the agreement is to benefit themselves or the corporation or company in which they are interested. Neither can the knowledge obtained by such officer under such circumstances and while so acting be imputed to the bank for the purpose of establishing a defense to an obligation assumed by the other party to such agreement." *Bank of Le Roy* v. *Purdy*, 100 App. Div. 64.

The general rule of agency that no person can act as agent in a transaction in which he has an interest, or to which he is a party opposed in interest to his principal, applies to a bank officer. 3 R. C. L. 445, citing *Campbell* v. *Manufacturers National Bank*, 67 N. J. L. 301.

A bank official possessing broad powers pertaining to the affairs of the bank, can not deal with the assets thereof for his individual benefit, as his fiduciary relationship thereto casts upon him the duty of exercising the utmost good faith and fairness in all his personal transactions with the bank. *First Nat. Bank* v. *Gunhus*, 133 Iowa, 409; 9 L. R. A. (N. S.) 471; *Choctaw Bank* v. *Gewin*, 16 Ala. App. 349.

In the words of Judge Charles Andrews, found in *Voltz* v. *Blackmar*, 64 N. Y. 440, 446: "It is a rule which stands upon the solid basis of reason and common sense, that an agent in matters touching the agency, cannot act so as to bind his principal when he has an adverse interest in himself. The law will not permit a conflict in this way between his interest and his duty, and removes the temptation to wrong, by absolutely disabling him in such a case from acting for himself, and at the same time for his principal." *Mechanics' Bank & Trust Co.* v. *Stratton*, 162 App. Div. 704, 714.

Holding these views, there must be judgment for plaintiff for the amount of the note and interest.

Judgment accordingly.