**BELT et al. v. SMITH et al.   (No. 6756.)**

(Court of Civil Appeals of Texas.  Austin.
June 30, 1924.  Rehearing Denied
.Oct. 8, 1924.)

1. **Accord and satisfaction** ⬤➾26(3)—**Evidence held not to show agreement to accept automobile in satisfaction of note.**

Evidence *held* not to show an agreement on holders' part to accept automobile in full satisfaction of purchase-money note.

2. **Bills and notes** ⬤➾338—**Payees may be holders in due course.**

Payees of a note *held* holders in due course, in view of Negotiable Instruments Law, §§ 30, 52, 57-59, and 191 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—30, 6001—52, 6001—57 to 6001—59, 6001—191).

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by Brooke Smith and others against O. E. Belt and others. Judgment for plaintiffs, and defendants appeal. Affirmed.

McCartney, Foster & McGee, of Brownwood, for appellants.

H. C. Peyton, R. E. Lee, and Wilkinson & McGaugh, all of Brownwood, for appellees.

McCLENDON, C. J.  Brooke. Smith, Sr., Brooke Smith, Jr., and Lola D. Lester and husband, Jack Lester, as partners under the firm name of Brooke Smith & Co., bankers, brought this suit against O. E. Belt, Fred L. Johnson, E. A. Chastain, C. M. Johnson, J. B. Lacey, and T. R. Lacey, to recover the balance due upon a promissory note for $1,169.80, dated November 13, 1920, due 90 days after date, and bearing 10 per cent. interest from date, and providing for 10 per cent. attorney's fees.  It was alleged that the defendants executed and delivered the note to the S. & H. Auto Company, a partnership composed of D. F. Stanley and Walter H. Helmeck, and that on or about November 16, 1920, the S. & H. Auto Company, for a valuable consideration, sold, indorsed, and delivered the note to plaintiffs.

The defendants Fred L. Johnson, J. B. and T. R. Lacey, and E. B. Chastain answered, admitting that they signed "the note described in plaintiff's petition," and setting up the following special defenses:

(1) That, prior to the execution of the note, defendants Belt and F. L. Johnson were partners in operating a garage, and that Stanley made an arrangement with Johnson by which his firm was to take the agency for the Dort automobile, and a Dort car was turned over to him by Stanley, with the understanding that the car was to be used for demonstration purposes, and sold if a purchaser could be found; that the note was executed with the understanding and agreement that it was not to be an unqualified promise to pay the sum named therein, but merely as a guaranty that the car would either be returned, or, if sold, that the proceeds, less commission, would be paid to the S. & H. Auto Company; that it was agreed that the note should so provide, and that Belt and Johnson signed it under the representation that it did so, and without reading it or knowing its contents, but relying upon the statement of Stanley in that regard.  These statements were alleged to have been fraudulently and falsely made as an inducement to them to sign the note. It was further alleged that the same statements were made to the other parties signing the note, except defendant T. R. Lacey, who signed at night and in the dark, under the representation by Stanley that the instrument he was signing was only a guaranty for the return of the machine or its proceeds.

(2) That the car was delivered to Stanley about February 15, 1921, for the account of defendants, which operated as a cancellation and settlement of the note, or in any event entitled defendants to recover of plaintiffs its value, alleged to be $1,250.

They also impleaded Stanley and Helmeck, against whom they prayed for judgment over for any amount that might be rendered against them.

Special exception was filed by the plaintiff to the first defense above set out, upon the ground that it was not alleged that plaintiffs had any knowledge or notice of the alleged infirmities in the note 'prior to or at the time they purchased it, and that plaintiffs, being holders in due course, would not be bound by any oral agreements entered into with Stanley prior to its execution and delivery. This exception was sustained. By a trial amendment the four answering defendants alleged that, when Stanley made the representations and statements previously alleged, he was acting for and on behalf of plaintiffs, who by accepting the note became chargeable with knowledge of the means and representations by which it was procured.

O. E. Belt, C. W. Johnson, and D. F. Stanley were not served with citation, and were dismissed from the case.

There was a trial to a jury upon special issues; the court submitting only two questions, the answers to which found the value of the car on May 26, 1923, at $476, and on June 21, 1921, $700.  Defendants requested the court to submit the issue whether the car was delivered to George Norwood for the account of Brooke Smith & Co., or at the instance of and for the account of defendants, or either of them, and also objected to the court's charge because it failed to submit the issue whether the car was sold at

the instance of Brooke Smith & Co., or at the instance of defendants. Upon the above findings of the jury, the trial court rendered judgment in favor of plaintiffs against all the answering defendants for $719.93, specified to be $649.24 principal, $5.41 interest, and $65.28 attorney's fees. Judgment over was also rendered in favor of defendants upon their cross-action against the S. & H. Auto Company. From this judgment the four answering defendants have appealed.

Appellants' brief contains four propositions, in which they question the correctness of the trial court's rulings in the following respects:

(1) The refusal to submit the issue whether the car was delivered to Norwood at the instance of Brooke Smith & Co. (Briefed under appellants' first proposition.)

(2) The alleged refusal of the trial court to permit defendants to show what took place between them and Stanley when the note was signed. (Briefed under appellants' third proposition.)

(3) The sustaining of the special exception to the third paragraph of defendants' answer, which embraced the defense numbered 1 above. (Briefed under appellants' second and fourth propositions.)

We have reached the conclusion that all of appellants' propositions should be overruled.

[1] The evidence was not sufficient, in our judgment, to support a finding that the car was turned over to Norwood in satisfaction of the note. The car was sold, and its value credited upon the note. There is no complaint of the judgment in this particular. The circumstances under which the sale was made, as disclosed by the appellants' evidence, were, in substance, as follows:

Fred L. Johnson, one of the defendants, testified that he received a letter from plaintiffs which stated:

"For me to bring the car back, that they wanted to realize on the car and I brought the car back and delivered it to Mr. Norwood over at the Highway Auto Company, because I had orders from Mr. McConnell (an employee of plaintiffs) to take it down and put it in his garage; he told me that in the letter and also when I came over. I went to him first when I came here and told him the car was there, and he told me to take it down there and I did. I did see the car afterwards, at Mr. Norwood's. I never got it afterwards. That was on or about June 20, 1921, somewhere along that time."

On cross-examination he stated:

"In that letter he just stated for me to bring the car back and where to take it to. As to whether he told me I had received credit on my note for the car when it was brought back—he said he wanted the car back so he could realize on it."

J. B. Lacey, another defendant, testified to having seen this letter, and described its contents as follows:

"It was something like this: To bring the car back over and leave it with Mr. Norwood. I am not sure where he said to leave it, but he said to leave it over here, that he wanted to sell it to realize on it."

The evidence of these witnesses presents the case as strongly for the appellants as the record will support. It does not show, in our opinion, an agreement on plaintiffs' part to take the car in full satisfaction of the note. Appellants' first proposition is therefore overruled.

Defendants offered no evidence, so far as the record shows, in support of their allegations regarding the circumstances and agreement under which the note was signed. Consequently there is no basis for complaint of the alleged action of the trial court excluding such evidence, and we therefore overrule appellants' third proposition.

The action of the trial court in sustaining the special exception to that portion of defendants' answer setting up an agreement between them and the S. & H. Auto Company, and fraud in the inception of the note, which is complained of in appellants' second and fourth propositions, was predicated upon the theory that the petition showed on its face that plaintiffs were bona fide holders of the note for value, and the answer did not charge plaintiffs with notice of such agreement or fraud, and did not otherwise controvert the allegations of the petition that plaintiffs acquired the note before maturity for value and in due course of business. The note introduced in evidence was made payable to the order of Brooke Smith & Co., and was indorsed "S. & H. Auto Co., D. F. Stanley." It will be observed from the statements of the pleadings, above, that plaintiffs' petition alleged that the note was executed and delivered to the S. & H. Auto Company, and by that concern sold, indorsed, and delivered to plaintiffs; but does not expressly allege that the S. & H. Auto Company were the original payees. Defendants' answer admitted signing the note "described in plaintiffs' petition," but there is no express allegation that plaintiffs were the original payees in the note, further than may be inferred from the following quotation, which relates to representations made by Stanley to defendants:

"That all they [defendants] need to do was to execute a note *payable to plaintiffs herein* in the sum set out in plaintiffs' petition." (Emphasis ours.)

In a supplemental petition, plaintiffs made the following allegation:

"That said D. F. Stanley did not have authority to make Brooke Smith & Co., bankers,

the payee in said note or obligation, and said note was purchased by plaintiffs because they considered same good and negotiable; and when said note was so purchased plaintiffs required the said D. F. Stanley to properly indorse said note for said S. & H. Auto Company in order to make them liable as indorsers."

When the note was offered in evidence, it was objected to on the ground of variance in that Brooke Smith & Co. were the original payees, whereas the petition declared upon a note in which the S. & H. Auto Company were payees. This objection was overruled, bill of exceptions taken, and error assigned thereon; but there is no proposition in the brief based upon this assignment. However, the action of the trial court, in overruling the objection to admission of the note in evidence cannot be justified upon any other theory than that the court construed the pleadings as, at least by inference, correctly describing the note. It may be extending the rule of liberality in matters of practice beyond proper bounds to give the pleadings this construction; but we prefer to err in such matters on the side of liberality, rather than defeat a litigant who has manifestly relied upon a theory of the case which the trial court apparently adopted in making its rulings. The proposition which appellants make under the assignment of error in question is that, under the Uniform Negotiable Instruments Law the original payee of a negotiable instrument cannot be a bona fide holder, but takes it subject to all legal defenses incident to its execution. Had defendants offered evidence in support of these defenses, the question would have been squarely presented. The sustaining of the special exception eliminated this defense, except under the allegation that Stanley was plaintiffs' agent, upon which allegation the proof failed. In dealing with the question, we shall therefore treat the pleadings as sufficiently alleging that Brooke Smith & Co. were the original payees in the face of the note.

[2] The allegations of the answer setting forth an agreement to the effect that the note was not to be an unconditional obligation to pay the amount thereof in money, but might be discharged either by return of the car or by accounting for the proceeds of its sale less commissions, were probably insufficient in law to constitute a defense to the note even in the hands of Stanley. Chalk v. Daggett (Tex. Com. App.) 257 S. W. 228; Grain Co. v. Winniford (Tex. Com. App.) 249 S. W. 195. However, the allegations of fraud in the inception of the note, at least in so far as T. R. Lacey was concerned, were sufficient as a defense to the note, unless plaintiffs were holders for value and in due course of business.

"At common law the payee of a negotiable instrument may be a bona fide holder thereof, if he acquire it in due course of business, before maturity and for value." Brownwood Bank v. Coleman Bank, decided by this court May 21, 1924, not yet published, 264 S. W. 1020; Watson v. Russell, 3 Best & S. 34; Armstrong v. Bank, 133 U. S. 433, 10 Sup. Ct. 450, 33 L. Ed. 747; Brill Co. v. Norton Co., 189 Mass. 431, 75 N. E. 1090, 2 L. R. A. (N. S.) 525; Bank v. Trust Co., 158 Mich. 94, 122 N. W. 547, 133 Am. St. Rep. 362; Jordan v. Jordan, 43 Am. Rep. 294; Bank v. Aull, 93 Tenn. 645, 27 S. W. 1014, 42 Am. St. Rep. 934; Brown v. Ravan, 91 Misc. Rep. 220, 154 N. Y. Supp. 1098, and other cases cited in these opinions.

"There are two opposing theories as to whether the payee of a negotiable instrument can be a bona fide holder thereof, under the Negotiable Instruments Law. According to one line of authorities, the payee in whose hands the instrument has its inception as an obligation cannot be a bona fide holder." Introduction to Annotation, 15 A. L. R. 437 et seq., wherein is given a very complete citation and digest of the cases upon the subject, both British and American.

The sections of the Uniform Negotiable Instruments Law which are considered to have bearing upon this question are:

"30. *When Instrument is Negotiated.*—An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery."

"191. *Definitions.*—* * * 'Holder' means the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof."

"52. *Holder in Due Course; Who is.*—A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face;

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"3. That he took it in good faith and for value;

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"57. *Rights of Holder in Due Course.*—A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.

"58. *Defenses against Holder Other than Holder in Due Course.*—In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable. But a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect of all parties prior to the latter.

"59. *Holder in Due Course; Presumption*

*and Burden of Proof.*—Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as holder in due course. But the last-mentioned rule does not apply in favor of a party who became bound on the instrument prior to the acquisition of such defective title." Acts 36th Leg. (1919), c. 123 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—30, 6001—191, 6001—52, 6001—57 to 6001—59).

In an opinion by the Supreme Court of Montana (Bank v. Smith, 59 Mont. 280, 196 Pac. 523, 15 A. L. R. 430) the question at issue is ably considered, and the opposing views of the several courts presented and discussed. After reviewing the decisions and announcing the common-law doctrine that the payee in a negotiable instrument may be a holder in due course, the court conclude:

"It is inconceivable that it was the purpose of the act to work a change in the law so radical without an express declaration to that effect, and we ought not to draw the inference that such a result was contemplated unless compelled by the weightiest considerations. Section 30 of the act (Rev. Codes, § 5878) provides: 'An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. If payable to bearer it is negotiated by delivery; if payable to order it is negotiated by the indorsement of the holder completed by delivery.'

"It is upon the last sentence of the section that the courts which hold that the change has been wrought base their conclusions—conclusions which can be justified only by assuming that the last sentence is a part of the definition of the term 'negotiated,' but that it is not seems to us certain.

"The first sentence of the section is complete in itself, and expresses the meaning of the term 'negotiated' as it was used in the law merchant. In Baring v. Lyman, 1 Story, 416, Fed. Cas. No. 983, Justice Story of the Supreme Court of the United States, at circuit, said: 'A bill (of exchange) is properly said to be negotiated when it has passed into the hands of the payee or indorsee, or other holder for value, who thereby acquires title thereto.' Liberty Trust Co. v. Tilton, 217 Mass. 462, L. R. A. 1915B, 144, 105 N. E. 605; Boston Steel & I. Co. v. Steuer, 183 Mass. 140, 97 Am. St. Rep. 426, 66 N. E. 646.

"It is also the common and popular signification of the term. Webster's Int. Dict.; Anderson's Law Dict. The fact that it is generally employed to characterize the act of transferring a bill or note from one holder to another does not limit its meaning to such a transfer.

"The last sentence of section 30 was manifestly intended only to describe the method by which one holder may pass title to another, but was not intended to define the exclusive methods by which negotiation can be accomplished. In other words, it was never intended by the act to place the payee in a worse position than he was before it was adopted. Liberty Trust Co. v. Tilton and Brown v. Rowan, above; Fletcher Moulton, L. J., in Lloyd's Bank v. Cooke (1907) 1 K. B. 794, 5 B. R. C. 666, 76 L. J. K. B. N. S. 666, 96 L. T. N. S. 715, 23 Times L. R. 429, 8 Ann. Cas. 182; Ex parte Goldberg & Lewis, 191 Ala. 356, L. R. A. 1915F, 1157, 67 So. 839; McDonough v. Cook, 19 Ont. L. Rep. 267; Knetchel Furniture Co. v. Ideal House Furnishers, 19 Manitoba L. R. 652. Indeed, the Supreme Court of Iowa, in Vander Ploeg v. Van Zuuk, above, said: 'We do not mean to say that in no case can the person named as payee in a negotiable instrument be the holder thereof "in due course" (giving an example of a supposititious case in which the payee would be a holder in due course at common law). There is no reason to think the situation of the parties to such a transaction is different under the act. The Uniform Negotiable Instruments Act.

"And our conclusion is fortified by other provisions of the act. The holder of a bill or note payable to order is the payee or indorsee in possession of it. Section 191. 'Every holder is deemed prima facie to be a holder in due course.' Section 59. Substituting for the term 'holder' in section 59, its equivalent as defined by section 191, and section 59 would then read: 'Every payee in possession of a note is prima facie a holder thereof in due course'—a conclusion which is impossible if negotiation by indorsement and delivery is necessary to constitute one a holder in due course.

"It seems necessary, in order to harmonize the several provisions of the act, to hold that the complete definition of 'negotiated' is contained in the first sentence of section 30, and that a payee who has taken a note complete and regular upon its face, before it was overdue, and for value and in good faith, may qualify as a holder in due course, and prima facie is such."

We have quoted at length from this opinion because the question is important and of first impression in this state, and the course of reasoning and conclusion reached is one with which we are in full accord.

The purpose of the Uniform Negotiable Instruments Law was not to entirely reconstruct the law relating to commercial paper, but to provide a uniform restatement of the law, to relieve uncertainty where it existed, to settle conflicts where the courts of different jurisdictions had disagreed, and to avoid as far as possible conflicts of decision in the future. How well these objects have been accomplished may afford ample ground for differences of opinion. To quote further from the Montana Case:

"In submitting the draft of the Uniform Negotiable Instruments Act, the chairman of the committee in charge of it declared: 'The statute proposed will be found clear, concise, and thorough.'

"It may be thorough, and it may be conceded that much is expressed in few words, but the fact that courts of high repute have reached diametrically opposite conclusions as to the meaning of several sections suggests that the

language is not as clear as its proponents believed it to be."

It is to be noted that in a number of cases holding that the payee of negotiable paper is not a holder in due course, the courts have expressed the view that such is not the rule under all circumstances. The illustration given in the Iowa Case of Vander Ploeg v. Van Zuuk, 135 Iowa, 350, 112 N. W. 807, 13 L. R. A. (N. S.) 490, 124 Am. St. Rep. 275, is:

"If A., purchasing a draft to be transmitted to B. in payment of A.'s debt to B., causes the draft to be drawn payable to B., no doubt A. is the holder of such draft, and B. taking it for value becomes a holder in due course. This was true before the passage of the negotiable instruments act."

The transaction detailed in this quotation is one not uncommonly met with, where money is transmitted by means of foreign bills of exchange. Armstrong v. Bank, above. In the opinion last quoted from it is conceded that the law merchant has not been changed in this regard. Such holding must necessarily rest, we think, upon the proposition that the Negotiable Instruments Law does not preclude the payee from being a holder in due course; or, to state it somewhat differently, a payee may, under that law, be a holder in due course. If such is the rule regarding foreign exchange and checks (Watson v. Russell, above), what is there in the law which in any way even intimates that a different rule shall apply to other forms of negotiable instrument? The language of the law does not afford any ground, either expressly or by implication, for any such distinction.

In the case at bar the evidence shows without dispute that the S. & H. Auto Company acquired the note in suit in a transaction to which that concern and the defendants were the sole parties, and that plaintiffs acquired the note from the auto company under such circumstances as to make them the holders in due course, unless the bare fact that they were made payees in the face of the note precluded them, as a matter of law, from being such holders. The members of the auto company partnership were not in any sense the agents of plaintiffs, and the latter were not affected as a matter of law with any knowledge or notice which the former may have possessed.

Without further elaboration of the subject, we hold that plaintiffs were holders of the note in due course within the meaning of that expression as used in the Uniform Negotiable Instruments Law. Appellants' second and fourth propositions are therefore overruled.

The judgment of the trial court is affirmed.

Affirmed.